[Civ. No. 6003. Third Appellate District.—May 25, 1938.]

R. ELLIOTT FERNALD, as Special Administrator, etc., Respondent, v. EVERETT B. LAWSTEN et al., Appellants.

James F. McBryde, Louis Ballenger and H. B. Pool for Appellants.

A. McWilliam, C. H. Hasbrouck and W. C. Anspach for Respondent.

THOMPSON, J.—From a judgment terminating a voluntary trust and directing the reconveyance of real and personal property, the trustee and his wife have appealed.

The plaintiff, Fanny Briggs Carr, was an unmarried woman 72 years of age at the time of the execution of the trust agreement which is involved in this suit. She owned a cosmetic laboratory and business in Glendale, together with real and personal property valued at about $80,000. In the spring of 1931 her household furniture was destroyed by fire. She wished to replace the furniture and with that object in view inquired of a friend regarding a reliable dealer from whom she could purchase the goods. He recommended that she deal with the appellant, Everett B. Lawsten, who operated a small second-hand furniture business valued at about $1500, located just across the street from her dwelling house. For the first time she met Mr. Lawsten for that purpose. At her invitation Mr. and Mrs. Lawsten visited in her home very frequently during the following year. A close bond of friendship and confidence developed between them. She consulted Mr. Lawsten about her business affairs. He was particularly agreeable to her, and came to enjoy her complete confidence. The plaintiff declared that Mr. Lawsten was the only man she knew in whom she had absolute confidence. She was weary of her business obligations and asked him to manage the cosmetic business for her, which he did to her entire satisfaction during the year following their introduction.

Mrs. Carr believed in tithing and was anxious to use her excess income for charitable purposes. Mr. Lawsten encouraged this inclination and aided her in fulfilling those plans. She procured him to attend to many of her personal affairs, such as banking and legal transactions. She had executed a will which was in the possession of her attorney. She sent Mr. Lawsten for that will, and after telling him she was prejudiced against wills on account of frequent legal conflicts over

such instruments, she destroyed her will in his presence, burning it in the fireplace. She told him she intended to create a trust of her property so as to carry on her business and her charitable objects. She told him that she would like to make him her trustee for that purpose. He assured her that he would faithfully carry out the objects of her trust and if, at any time, she wished him to convey any of her property to others or reconvey it to her, he would promptly do so at her request. She asked him to inquire regarding a good and reliable lawyer. He did so and recommended a firm consisting of two attorneys, who visited her several times to secure the data for drawing the necessary instruments. She told them she intended to create a voluntary trust in Mr. Lawsten as above stated. Those lawyers advised her against that procedure, saying that it placed too much power and authority in the hands of a stranger. She, however, insisted on creating the trust and the instruments were prepared and duly executed. The trust agreement and conveyances of property were executed at the same time as a part of the same transaction. They conveyed to Everett B. Lawsten all of the real and personal property which the plaintiff possessed, including the following: Lot 14, tract 4490, City of Glendale; lot 53, tract 4554, Glendale; the east half of lot 19, block 4, tract 1788, San Bernardino County; one share of water stock, evidenced by certificate number 1395; a lease to real property at number 1601 E. Colorado Boulevard in Glendale, dated June 1, 1927, from plaintiff to H. Ito; eight promissory notes payable to plaintiff, aggregating the sum of $18,406.58; a lease to a portion of lot 14, tract 4490, City of Glendale, dated June 1, 1932, to S. Tomiyana; a $1,000 certificate, number 341 of the "Vanderbilt News"; one certificate number 3677 of Trust No. 33, for one share in "Ferguson Trust"; ninety shares of common stock of the Southern California Edison Company; a debt of $600 owing by E. B. Lawsten; all books, documents, records and equipment of the cosmetic business.

The trust agreement which was executed as a part of the same transaction was made September 27, 1932, between Fanny Briggs Carr, as party of the first part, and Everett B. Lawsten, as party of the second part. It contains the following language:

"Whereas the First Party has, by deed executed concurrently with this said instrument, deeded to the Party of the Second Part all of her right, title and interest in and to the following described property, . . .

"Whereas the First Party has transferred to the Second Party, all of her right, title and interest in and to her business known as Fanny Briggs Carr, Face Preparations, and

"Whereas the First Party has reached the age in life where she desires to escape the difficulties and responsibilities of running such a business and taking care of property, and

"Whereas the Second Party has been and now is managing the said business of said First Party and is also taking care of the real property of First Party together with the collection of rentals etc.,

"Now, Therefore, for and in consideration of the premises, the First Party, by deed executed concurrently herewith, conveys unto the Second Party, *as Trustee,* all and singular the property hereinbefore described, real and personal, . . . *upon the following trusts and for the following uses and purposes:*

"First. That the First Party shall have the right to occupy the residence on said real property during her lifetime.

"Second. The Second Party agrees to manage and run the properties and/or business of the First Party during her lifetime and to collect the rents and revenues from the same; the Second Party agrees to pay the net income from the rents, issues and profits of said property and business to the First Party during her natural lifetime, after first deducting the charges for repairs, taxes, assessments, insurance, etc.;

"Third. It being understood and agreed and a consideration of the transfer of this property that the First Party shall receive the income from the real property, leases, notes, stocks, bonds, mortgages, trust deeds and business, . . .

"Fourth. In case the income *of said trust fund* shall not be sufficient for the care, maintenance and support of said First Party, *trustee* may and shall use so much of the principal as may be necessary for said purpose.

"At the death of the said First Party *the said trust shall terminate,* and the property remaining in the said *trustee's hands,* real and personal, is hereby granted to Everett B. Lawsten, heirs and assigns forever.

"It is understood and agreed that the Second Party is to hold the said real property in his name and in his possession

during the lifetime of the First Party, *unless otherwise agreed upon in writing by the parties hereto,* and to manage, run and take care of the said real property and business *for the sole benefit of the First Party,* . . .

"In the event that the Second Party, *as trustee, should cease to be the trustee by reason of his death or otherwise,* then in that event R. Elliott Fernald is to act as trustee until the termination of this trust as aforesaid.

"The Second Party, Everett B. Lawsten, hereby accepts the duties and obligations *as trustee* in accordance with the terms of this instrument."

Difficulties arose between the trustor and the trustee regarding the execution of this trust agreement, and on October 22, 1934, the trustor revoked in writing the trust as provided by section 2280 of the Civil Code. This suit to terminate the trust, to require the execution of reconveyances to the plaintiff of the real and personal property involved therein, and to quiet title, was then commenced against both Mr. and Mrs. Lawsten. The complaint was couched in two counts. Mrs. Lawsten was made a party defendant to foreclose any claim of community interest which she might make to the property by virtue of the conveyances which were made to her husband. The defendants denied the essential allegations of the complaint. The cause was tried by the court sitting without a jury. Findings were adopted favorable to the plaintiff in every respect.

It was determined that the several conveyances of real and personal property and the written agreement were executed as a part of the same transaction and that they constituted a voluntary trust, subject to revocation by the trustor under the provisions of section 2280 of the Civil Code, which revocation was duly accomplished, and the trustee was thereupon directed to reconvey to plaintiff all of the real and personal property remaining in his custody. Compensation for the trustee's services was fixed by the court at the sum of $1500, in addition to such pay as he had already received and retained. A decree to that effect was accordingly rendered. From that decree the defendants have appealed.

The appellants contend the evidence fails to support the finding that a confidential relationship existed between the plaintiff and Mr. Lawsten; that the transaction does not constitute a voluntary trust, but on the contrary that it was an

absolute conveyance to Mr. Lawsten of the real and personal property subject to a life estate therein in favor of the vendor; that the written agreement is irrevocable and rescission of the contract does not lie; that the court erred in admitting oral evidence varying the terms of the written instruments, and that the court erred in allowing compensation to the trustee for only the sum of $1500.

▇▇ The record contains ample evidence to support the finding that the transaction in question constitutes a voluntary trust, which is defined in section 2216 of the Civil Code as follows:

"A voluntary trust is an obligation arising out of a personal confidence reposed in, and voluntarily accepted by, one for the benefit of another."

The court found:

"That it is true that on the 27th day of September, 1932, plaintiff as trustor did create a voluntary trust, therein making the defendant Everett B. Lawsten trustee, wherein and whereby the said plaintiff transferred and delivered to the defendant Everett B. Lawsten, in trust, all of the said real and personal property hereinbefore described.

"That it is true that for a long time prior to the creation of said voluntary trust as aforesaid, the most confidential relationship existed between the plaintiff and the defendant Everett B. Lawsten, . . . "

The court also found that the conveyances of real and personal property were made to the defendant Lawsten without consideration, except for his conditional expectancy of acquiring title thereto upon the death of the plaintiff. The transfer of property connected with the trust agreement is testamentary in its nature. With respect to such transactions it is said in 26 Ruling Case Law, page 1208, section 49:

"A trust for the beneficial interest of the author during life is revocable as to that interest, and may be revoked by a conveyance from the trustee to him; and it seems that if no one has any interest in the fund but the settlor himself he may require a conveyance of the trust property to himself."

In 100 American State Reports, page 105, note, it is said:

"If a trust is both voluntary and testamentary in character and no immediate interest vests thereunder in any beneficiary, it so far resembles a will that it may be revoked by the grantor at any time prior to his decease."

■ Regardless of the general rule with respect to the right to revoke trusts which are completed, the amendment of section 2280 of the Civil Code specifically authorizes the revocation of voluntary trusts as follows:

"Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee. When a voluntary trust is revoked by the trustor, the trustee shall transfer to the trustor its full title to the trust estate. Trusts created prior to the date when this act shall become a law shall not be affected hereby."

In the present case the voluntary trust was created September 27, 1932, after the adoption of the preceding amendment to the code, and the trustor fully complied with the requirements of that section by notifying the trustee in writing of the revocation of the trust on October 22, 1934. The trust agreement contains no express provision that it is to become irrevocable. It is expressly provided that the trust shall become revocable when "agreed upon in writing by the parties thereto". This does not affirmatively declare the trust may not be otherwise terminated. Since the document is not expressly made irrevocable, it may be revoked in the manner provided by section 2280 of the Civil Code. The instrument specifically declares in detail the manner in which the trust is to be administered by the trustee. It includes in that respect language to the effect that the trustee is "to manage, run and take care of the said real property and business for the sole benefit of the First Party, and the Second Party agrees to exert his best efforts in an honest endeavor to manage and run the said properties and business of the said First Party". The clear inference from the language of the trust agreement is that, for any wilful and flagrant violation of that agreement on the part of the trustee, it may be revoked as provided by section 2280 of the Civil Code. The trial court was therefore authorized in this equitable action to decree a termination of the voluntary trust and to direct the reconveyance of the property to the trustor.

■ The cases cited by the appellants to the effect that when the trust agreement declares the method by which it may be revoked it is exclusive in that regard and must be substantially followed have no application to the present case, since they were decided by the California courts before the

amendment of section 2280 of the Civil Code was enacted, which now authorizes the revocation of a voluntary trust in the manner therein provided, unless it is expressly made irrevocable. Where the statute provides the specific procedure for revoking a voluntary trust, it will prevail over an agreement between the parties to the contrary, provided the trust is not expressly made irrevocable.

There is no merit in the appellants' contention that the complaint fails to allege facts sufficient to show that a confidential relationship existed between the plaintiff and the. trustee, Everett B. Lawsten. The complaint contains allegations sufficient to raise that issue. No demurrer was filed by the defendants. The confidential relationship of the trustor and the trustee was admitted by failure on the part of the defendants to deny those allegations in the complaint.

The evidence adequately supports the findings of the court to the effect that the property was conveyed to the trustee, Everett B. Lawsten, without consideration and with an express agreement that he would, at any time, reconvey it to the plaintiff. The court found that the defendant, Everett B. Lawsten, agreed to faithfully execute the trust for the sole benefit of the trustor and that he would consult and advise with her regarding the management of the property and the disposition of the proceeds therefrom, and carry out her wishes with relation thereto and that he "would *upon request* of the plaintiff trustor transfer and convey his full title to the trust estate to her or to whomsoever she might designate without expense or obligation to the trust estate".

It was not necessary for the court specifically to find that the trustee procured the conveyance of the real and personal property with the intent to defraud the plaintiff. It was alleged and adequately proved that the trustee obtained title to the property with the definite promise to carry out the wishes of the trustor with respect to its management and to reconvey it to her upon request therefor, and that he failed and refused to do so. Under such circumstances fraud in procuring the property is implied.

In the case of *Alaniz* v. *Casenave,* 91 Cal. 41 [27 Pac. 521], a judgment was affirmed which required a grantee to reconvey land to the owner thereof, toward whom he occupied a relationship of confidence and trust. In that case it was held that where the confidential relationship was established, con-

structive fraud would be presumed without the necessity of either alleging or proving an actual intent on the part of the grantee to defraud the owner of the land. Quoting with approval from the case of *Feeney* v. *Howard,* 79 Cal. 525 [21 Pac. 984, 12 Am. St. Rep. 162, 4 L. R. A. 826], it is said in the Alaniz case:

"If by means of a parol promise to reconvey a party obtains an absolute deed without consideration from one to whom he stands in a fiduciary relation, the violation of the promise is constructive fraud, although at the time of the promise there was no intention not to perform."

■ There is an abundance of evidence in the present case to show that the property was conveyed to Mr. Lawsten solely because of the absolute confidence and trust which the plaintiff had in him to administer the trust for her benefit according to her desire, and to reconvey it, or any part thereof, to her or to any other person she named as grantee, at her request. Her attorneys warned her not to execute the trust agreement, but she insisted on doing so, positively declaring that she had more confidence in Mr. Lawsten than in any other man in the world. There was no consideration for the transfers of property except the trustee's expectancy to inherit what remained of the property at the death of the trustor, and whatever compensation she saw fit to pay him for his administration of the trust.

Under such circumstances equity will enforce a reconveyance of the property on the ground of constructive fraud. Moreover, section 2280 of the Civil Code specifically provides for a revocation of such a voluntary trust.

■ It is insisted the court erred in receiving oral evidence regarding the circumstances and conditions under which the trust agreement and conveyance of property were executed, for the reason that it tended to vary the terms of the written instruments. We are, however, of the opinion the present case falls within the exception to the well-known rule of law which precludes the introduction of oral testimony which varies the terms of a written instrument. The complaint in this case alleges facts which amount to constructive fraud in procuring the execution of a voluntary trust, together with the conveyances of property in question. Where fraud is involved in procuring the execution of a written instrument, oral evidence thereof is always admissible. In this case the

trust was procured by the trustee *ex maleficio* and justice will not permit him to retain the fruits of his stratagem by adhering to a general rule of evidence. Section 1640 of the Civil Code provides that:

"When, through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded."

In 3 Jones' Commentaries on Evidence, second edition, page 2628, section 1450, it is said:

"It is elementary that the statute of frauds does not prevent the proof and enforcement of those implied trusts which arise when one sustaining a fiduciary relation obtains the legal title to property by fraud or in any other such manner that he cannot equitably hold property which justly belongs to another."

In this case the oral evidence was competent to show that the transaction was intended by the parties to be and that it constitutes a voluntary trust which was procured by constructive fraud. In *Bradley Co.* v. *Bradley*, 165 Cal. 237 [131 Pac. 750], it was held that a parol trust in real property, created at the time when a voluntary grant of the property was made, without consideration, between persons occupying relations of great confidence to each other, and in reliance upon those relations to the effect that the grantee would take and hold the property for the benefit of the grantor and reconvey it to him on demand, is enforceable in equity upon its repudiation by the grantee. The court said:

"In its creation the trust was voluntary, and however at variance it may be thought to be with the mandate of the statute as to the creation of trusts in land, it is of such character that equity will not permit the trustee to take advantage of the existing confidential relations in which the trust itself originated and by repudiating the trust obtain an unconscionable advantage over the confiding trustor and beneficiary. So numerous are the cases upon this subject that it must suffice to refer to *Lauricella* v. *Lauricella*, 161 Cal. 61 [118 Pac. 430]; *Cooney* v. *Glynn*, 157 Cal. 583 [108 Pac. 506]; *Jones* v. *Jones*, 140 Cal. 587 [74 Pac. 143]; *Kimball* v. *Tripp*, 136 Cal. 631 [69 Pac. 428]."

The extrinsic circumstances surrounding this transaction are admissible for the purpose of properly construing

the real nature of the trust agreement, which is the chief issue in this case. (Secs. 1860 and 1856, Code Civ. Proc.) Section 1860 provides:

"For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret."

The last paragraph of section 1856 modifies the preceding portion thereof regarding the general rule prohibiting the varying of the terms of a written instrument, as follows:

"But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in section eighteen hundred and sixty, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term agreement includes deeds and wills, as well as contracts between parties."

We therefore conclude that the oral evidence was properly admitted to construe the nature of the instruments and for the purpose of showing constructive fraud.

■ Finally, it is asserted the court failed to make the proper allowance to the trustee as compensation for his services. It is claimed the allowance of $1500 which was awarded to the trustee does not purport to include necessary expenses which he incurred in administering the trust as required by section 2273 of the Civil Code. We are directed to no evidence of such expenses which have not been fully compensated. The court found that he was entitled to $1500 "together with such sums as he has already received as profits from the cosmetic business belonging to the plaintiff and as free rental of trust property occupied by defendants". In the absence of evidence to the contrary we must assume, in support of the judgment that the defendants received all of the profits of the business, and free rental of the property in question. Moreover, the trust agreement provides, and we must assume the evidence shows that all necessary expenses incurred by the trustee in administering the trust have been retained by him from the gross income of the property. There is no evidence to the contrary. The agreement provides that only the *net income* from the property is to be paid to the plaintiff. We assume that is exactly what occurred. The agreement reads in that regard:

"The Second Party agrees to pay the *net income* from the rents, issues and profits of said property and business to the First Party during her natural lifetime, after first deducting the charges for repairs, taxes, assessments, insurance, etc.

" . . . The said Second Party, as trustee, holding said property for the First Party, shall collect all of the income, interest and other proceeds, if any from said property and business from time to time when due, and deliver the same to First Party for her support and maintenance after, however, first deducting the charges and expenses as set out in number Second hereof."

The compensation to which a trustee is entitled, when the trust has not been fully administered, and the instrument creating the trust is silent in that respect, is such reasonable sum as, in sound discretion, the court may allow. (Sec. 1122, Prob. Code; 25 Cal. Jur. 336, sec. 186; *Treadwell* v. *Nickel*, 194 Cal. 243, 265 [228 Pac. 25].) The allowance of commissions for the services of a trustee, in the same amount to which an executor is entitled, under section 2274 of the Civil Code, applies only when the trust has been fully administered and completed. In 25 California Jurisprudence, at page 336, it is said in that regard:

"This right to the statutory commission exists, however, only where the trust has been fully administered."

In the present case the trust was not fully administered, and section 2274 of the Civil Code, therefore, has no application to the circumstances which are here involved. We are of the opinion the allowance which the court awarded to the trustee is just and reasonable.

The judgment is affirmed.

Plummer, J., and Pullen, P. J., concurred.