[Civ. No. 13963. Second Dist., Div. Two. Apr. 30, 1943.]

FRED H. BIXBY, JR., Plaintiff and Appellant, v. KATHA-RINE BIXBY HOTCHKIS et al., Respondents; JANE BIXBY, Cross-defendant and Appellant.

[Civ. No. 13964. Second Dist., Div. Two. Apr. 30, 1943.]

FRED H. BIXBY, JR., Plaintiff and Appellant, v. KATHA-RINE BIXBY HOTCHKIS, Respondent; JANE BIXBY, Cross-defendant and Appellant.

A. Brigham Rose, Edward M. Raskin, Hugh K. McKevitt and Jack Howard for Appellants.

Sherman Anderson, in pro. per., Newlin & Ashburn and A. W. Ashburn for Respondents.

WOOD (W. J.), J.—Plaintiff is prosecuting appeals from two judgments in actions which he commenced on November 22, 1940, and which were consolidated for the purpose of trial. In each action defendant Katharine Bixby Hotchkis filed a cross-complaint and the appeals are from judgments rendered in her favor on the cross-complaints.

In one of the actions, which plaintiff entitled a claim and delivery action, he alleged that he is the owner and entitled to the possession of 10,703¾ shares of the capital stock of the Fred H. Bixby Company, of the value of $750,000; and that defendant Katharine Bixby Hotchkis took possession of the stock within three years before the commencement of the action wihout plaintiff's consent and is withholding the stock against his will. Judgment was asked for the possession of the stock and for $25,000 damages for its detention. In the other action, plaintiff named as defendants Katharine Bixby Hotchkis, her husband Preston Hotchkis, Sherman Anderson and Fred H. Bixby Company, a corporation. He attempted to set forth four causes of action in his complaint, but each alleged cause of action appears to be a claim for the sum of $23,465.66, dividends received by Mrs. Hotchkis from the stock mentioned in the complaint in the other action, which defendants are alleged to have received for the use and benefit of plaintiff.

Upon the filing of the cross-complaints Fred H. Bixby and Florence Green Bixby, parents of plaintiff, and Jane Bixby, wife of plaintiff, were made cross-defendants by order of the court. In her cross-complaints Mrs. Hotchkis alleged that prior to June 8, 1934, plaintiff was the owner of 10,453¾ shares of the capital stock of the Bixby Company, represented by certificates Nos. 1 and 55; that on June 8, 1934, plaintiff voluntarily executed a trust instrument, a copy of which is attached to each cross-complaint, whereby an irrevocable trust was created for the period of 20 years, Mrs. Hotchkis being named as trustee; that pursuant to the terms of the trust instrument the certificates Nos. 1 and 55 were assigned and transferred to Mrs. Hotchkis as trustee and were

surrendered to the corporation, which issued in lieu thereof and delivered to Mrs. Hotchkis certificate No. 9 for 10,453¾ shares of the company stock in the name of Mrs. Hotchkis as trustee for plaintiff; that thereafter plaintiff's father caused to be issued from his own holdings and delivered to Mrs. Hotchkis as trustee 250 shares of the stock of the Bixby Company which were added to the corpus of the trust with the knowledge, approval and consent of plaintiff; that the trust has not been terminated and that she holds the stock by virtue of the trust instrument and in pursuance of its terms. Upon filing the cross-complaints Mrs. Hotchkis resigned as trustee. She further alleged that Title Insurance and Trust Company, named in the trust instrument as her successor in case of her resignation, has declined to accept appointment as successor trustee of the trust until settlement by the court of her accounts as trustee; that the new cross-defendants brought into the action are the heirs at law of plaintiff. She further alleged that plaintiff claims that the trust instrument is invalid and that an actual controversy exists regarding her legal rights and duties as. trustee; that these matters cannot be determined in an action at law and that equity alone has jurisdiction over the controversy, which can be determined only by a declaratory judgment or other decree of a court of equity. She asked that the trust created June 8, 1934, be declared a valid and subsisting irrevocable trust; that her accounts be settled and approved; that the trust estate be turned over to Title Insurance and Trust Company or to a successor to be appointed by the court.

The instrument of June 8, 1934, gave to the trustee plenary powers in the management of the trust. The instrument further provided: ''The whole title, legal and equitable, in fee, to the trust estate, is and shall be vested in the trustee, as such title in the trustee is necessary for her due execution of this trust. The beneficiary or beneficiaries take no estate or interest therein and the interests of all beneficiaries hereunder are personal property only, consisting of the right to enforce the due performance of this trust. . . . . Upon the expiration of the term of this trust, hereinabove specified, to-wit, a period of twenty (20) years from the date hereof, my trustee shall distribute, or cause to be distributed, my trust estate, together with all accumulations, in the manner following: (a) The whole thereof to me personally if I be

living at the time. (b) In the event that I should die prior to the expiration of said period the whole thereof to my heirs of law in accordance with the laws of succession of the State of California then in effect. It is hereby declared to be my express intention to make the within trust irrevocable during the twenty (20) year period specified, and the same shall, therefore, be deemed to be an irrevocable trust for all intents and purposes. In case of the death or inability to act of the said Katharine Bixby Hotchkis, as trustee, or her resignation as such trustee, I hereby appoint Title Insurance and Trust Company, of Los Angeles, California, to act as her successor as such trustee.''

In his answers to the cross-complaints plaintiff alleged that he signed the trust instrument ''by reason of the coercive suggestions on the part of his said sister, the cross-complainant, that if he did not sign he would be disinherited by his father; . . .''; and that ''its harsh and illegal provisos were prepared by the connivance of the husband of cross-complainant and other relatives, and were made and incorporated with the object and design to defraud cross-defendant. . . .''

The issues presented by the cross-complaints and the answers thereto were decided by the trial court in favor of the cross-complainant, Mrs. Hotchkis. At the time he signed the trust instrument plaintiff was twenty-four years old. He is the only son of Fred H. and Florence Green Bixby. He ·has three sisters, the eldest of whom is Mrs. Hotchkis. The Fred H. Bixby Company is a family corporation and some time prior to the execution of the trust instrument in question Mr. Bixby, Sr., had given a large portion of his stock in the family corporation to each of his four children. Before the execution of the trust instrument plaintiff had lost large sums of money at gambling, had indulged in drinking to excess and had issued checks for which he had no funds in the bank. This caused family concern lest he would dispose of holdings in the company to people who were not members of the family. As a result of consultations in which plaintiff and various members of the family took part plaintiff executed the trust instrument and delivered the stock certificates to his sister as trustee. The court expressly found: ''It is true that said trust was voluntarily created by plaintiff and that it was so created because of his own improvidence and

instability of character which plaintiff himself recognized and which, as he knew, threatened the dissipation of his assets unless same were placed in trust for him; that said trust is and at all times has been a benefit to plaintiff; that plaintiff now possesses and manifests the same personal characteristics and that a termination of the said trust at this time would not be for plaintiff's benefit, but would be a detriment to him and his future . . ." All of the findings are amply sustained by the evidence. Indeed, in view of the overwhelming evidence in support of the allegations of the cross-complaint both in quantity and quality and the undisputed conduct of plaintiff, together with his own admissions, it is difficult to perceive how any other findings could have reasonably been made.

▮ The trial court did not err in holding that the instrument of June 8, 1934, created a valid irrevocable trust. There is no legal prohibition against the creation of a voluntary trust for the benefit of the trustor or his heirs at law.

▮ Nor is the creation of such a trust rendered invalid by a provision conferring upon the trustee discretionary powers in the management and control of the trust estate. (*Gray v. Union Trust Co.*, 171 Cal. 637 [154 P. 306].) Nothing appears on the face of the instrument which would justify a holding that it created a spendthrift trust and the court expressly found that the trust is not a spendthrift trust. No rights of creditors are involved. The trust instrument contains no provision against public policy such as was under review in *McColgan* v. *Magee Inc.*, 172 Cal. 182 [155 P. 995, Ann.Cas. 1917D, 1050], relied upon by plaintiff. In 1931 section 2280 of the Civil Code was amended to provide: "Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee. . . ." Prior to 1931 there was no right of revocation unless expressly reserved. Under the amendment revocation may be brought about in the absence of a provision making the trust irrevocable but in the case now before us the document clearly states that the trust is irrevocable for the period of twenty years. Moreover, contrary to the assertion by plaintiff upon which he bases his claim of right to revoke the trust, plaintiff is not the sole beneficiary, for it is provided in the instrument that in the event of plaintiff's death prior to the expiration of the twenty year period the estate at the end of the period is to pass to plaintiff's heirs at law. ▮ One who creates a voluntary trust is not the sole beneficiary if

he manifests an intention to create a contingent interest in others, such as his heirs at law. (Restatement of the Law of Trusts, Comment b, p. 1039; *Gray* v. *Union Trust Co., supra.*)

■ The trial court properly ruled that the resignation of Mrs. Hotchkis as trustee did not indirectly effect a revocation of the trust and that it was her duty to protect the trust estate pending the settlement of her account and the delivery of the corpus of the estate to her successor. After Mrs. Hotchkis entered upon the management of the trust it was her duty to continue to manage the property until her discharge as trustee. (*Cauhape* v. *Barnes,* 135 Cal. 107, 112 [67 P. 55].) The trust instrument expressly provided that in the event of her resignation Title Insurance and Trust Company should act as her successor. Clearly there was a manifest intention of making the trust irrevocable regardless of the refusal of Mrs. Hotchkis to continue as trustee. It was but natural that when plaintiff attacked the account of Mrs. Hotchkis as trustee, the corporation named as her successor should refuse to accept the trust until the settlement of the trustee's account. Moreover, plaintiff was attacking the validity of the trust itself and it was the clear duty of the trustee to defend the trust until such time as the validity of the trust should be established, her accounts settled and arrangements made for transferring the trust property to another trustee. (*Gray* v. *Union Trust Co., supra; Estate of Hubbell,* 121 Cal.App. 38, 40 [8 P.2d 530].) Since it was her duty to protect the trust it is obvious that she continued to be vested with the necessary powers for the protection of the trust during the period between her resignation and the transfer of the trust property to her successor. In section 2260 of the Civil Code it is provided that a resigning trustee must use at least ordinary care to secure the appointment of a trustworthy successor before accepting his own final discharge. ■ For protecting and conserving the trust property and defending it against attack Mrs. Hotchkis is entitled to reimbursement for necessary expenses incurred, including reasonable attorney fees. (*Estate of Scrimger,* 188 Cal. 158, 168 [206 P. 65]; *McMurray* v. *Sivertsen,* 28 Cal.App.2d 541 [83 P.2d 48].) Her right to indemnification out of the trust property for expenses actually incurred in defending the trust is expressly provided by section 2273 of the Civil Code.

■ To the extent that she is entitled to indemnity she has a lien upon the trust property, a lien which the trial court

properly accorded her in its judgment. (Restatement of the Law of Trusts, sec. 244c.)

▇ We find no error in the rulings of the court settling the account of the trustee. Objections are made by plaintiff to an allowance for part of the expense of a daily transcript of the trial of the proceedings, to the payment of $200 to Mr. Windes and to the payment of $30 to Mr. Chandler. The court did not abuse its discretion in deciding that a daily transcript was proper. Mr. Windes, an expert accountant, was in attendance for eight days and an allowance of $25 per day for such services is not excessive. Mr. Chandler is a resident of San Francisco who came to Los Angeles to be a witness at the trial. The allowance of $30 was for his traveling expenses and it cannot be considered as unreasonable. The court was not limited to the statutory fees allowed witnesses in passing upon reasonable expenditures of the trustee in bringing a witness from a distant city. Plaintiff also complains that the court erred in crediting the trustee with certain payments of insurance premiums on the policy on the life of plaintiff's father, which had been assigned to and for the benefit of plaintiff and his sisters. The evidence showed that plaintiff agreed to these payments. Moreover, it was shown in evidence that the father's financial condition was such that the payments were properly made in the interest of the trust property.

▇ Plaintiff contends that the trial court erred in permitting conversations between various defendants when plaintiff was not present. Plaintiff had charged in his answers to the cross-complaints that the trust indenture had been prepared under the direction of defendant Preston Hotchkis and that its execution had been brought about as the result of a conspiracy between various defendants. The circumstances supporting the preparation and execution of the trust indenture thus became material and important. Mrs. Hotchkis and the other defendants had the right to disprove the charges of conspiracy by the evidence admitted by the court.

It is contended by plaintiff that the trial court erred in holding that the causes of action set forth in his complaints were barred by section 338, subdivisions 3 and 4, section 339 subdivision 1, and section 343 of the Code of Civil Procedure. We find no occasion for discussing this point. Our ruling that the trust indenture in question created a valid irrevocable trust and our conclusions reached on the points presented by the

litigation as above set forth make it unnecessary to decide whether plaintiff's causes of action were barred by the statute of limitations. Regardless of any view that might be taken on this point the judgments against him must be affirmed.

■ There is no merit in plaintiff's contention that he was improperly deprived of the right of a jury trial on at least one of his causes of action. The right to a trial by jury should be determined by the nature of the issues to be tried as framed by the pleadings as a whole when the action is ready for trial. It is not to be determined by the allegations of the complaint alone, (*O'Dea* v. *Hibernia Savings & Loan Soc.*, 119 Cal.App. 622 [7 P.2d 318]; *Woolsey* v. *Woolsey,* 121 Cal.App. 576 [9 P.2d 605].) ■ The cross-complainant presented issues for adjudication in an action in equity. She sought to have established the validity and irrevocability of the trust and to quiet the trustee's title to the stock. She averred the existence of an actual controversy calling for a declaratory judgment, the estoppel of plaintiff to deny the trust, an existing dispute as to the trustee's account and a claim for indemnification for expenses. She presented her resignation to the court for confirmation or acceptance and asked for the appointment of a successor trustee. These actions were clearly equitable in their nature. The determination of these issues was necessary before it could be determined whether plaintiff had the right to recover possession of the stock. Plaintiff did not have the right to oust the court of its equity jurisdiction in an action of purely equitable cognizance by presenting to the court an additional issue claimed to be triable before a jury, which could not be settled until after the equity issues were determined. The course followed by the trial court in the present litigation is in line with the recognized practice in such cases in the courts of California . (*Fish* v. *Benson,* 71 Cal. 428 [12 P. 454]; *Swasey* v. *Adair,* 88 Cal. 179 [25 P. 1119]; *Thomson* v. *Thomson,* 7 Cal.2d 671 [62 P.2d 358, 117 A.L.R. 1].)

■ Plaintiff complains that the allowances made by the court for trustee and counsel fees are excessive. The trial court awarded the sum of $3,100 to Mrs. Hotchkis for her services as trustee from the date of the establishment of the trust in 1934 to the time of the trial of the actions and awarded to her as counsel fees for the services of her attorney in the present litigation the sum of $22,000. The trial of the actions involving property valued by plaintiff at three-quarters of a million dollars lasted from May 26 to Au-

gust 8. Mrs. Hotchkis and her counsel were compelled to make a defense to vicious charges against her, which were shown to be unfounded. During the trial plaintiff's counsel pursued a reprehensible course of conduct in which he frequently heaped vituperative abuse upon the trustee and upon her counsel, a course of conduct which has been followed to some extent in this court. The trial court acted well within its discretion in fixing the amount of counsel fees. The award to the trustee is more vulnerable to criticism that it is inadequate than it is to the charge that it is excessive.

Other points made by plaintiff are not of sufficient importance to justify discussion herein. We are satisfied that plaintiff was given a fair trial and that the court properly determined the issues presented.

The judgments are affirmed.

Moore, P. J., and McComb, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 28, 1943. Gibson, C. J., Carter, J., and Traynor, J., voted for a hearing.