[Civ. No. 14863. Second Dist., Div. Three. Dec. 28, 1945.]

TITLE INSURANCE AND TRUST COMPANY (a Corporation), as Executor etc., Respondent, v. LILY K. McGRAW, Appellant.

James S. Jarrott, W. H. Anderson and A. G. Ritter for Appellant.

C. E. McDowell, McIntyre Faries and Allan M. Carson for Respondent.

WOOD, J.—In this rescission action plaintiff obtained judgment, and the defendant appeals. During the pendency of

the appeal, the plaintiff Elizabeth Snyder died and the Title Insurance and Trust Company, a corporation, the executor of her will, has been substituted as plaintiff. Elizabeth Snyder will be referred to herein as the plaintiff.

On April 24, 1942, plaintiff, the owner of an apartment house in Los Angeles, executed a grant deed conveying that property to defendant. At that same time and as a part of the deed transaction, the defendant executed a document as follows: "*Agreement* For Value Received, I, Lily K. McGraw, agree and promise to pay all money derived from the operation and management of the Palomar Apartments, 979 South Oxford Avenue, Los Angeles, California, to Elizabeth Snyder. I will furnish reports and an accounting whenever so requested by Elizabeth Snyder and I promise to operate and continue to operate the business of said apartment house until a sale of said apartment house has been consummated; and the proceeds of said sale, I promise to pay to Elizabeth Ryland Snyder. Dated: April 24, 1942. *Lily K. McGraw.*" Also at that time and as a part of the same transaction, the defendant executed another document as follows: "Amendment to Above Agreement. I, Lily K. McGraw, for value received, promise to pay to Elizabeth Snyder, also known as Elizabeth Ryland Snyder, the sum of Three Hundred ($300.00) Dollars per month until a sale of the said Palomar Apartments has been consumated or until the death of the said Elizabeth Ryland Snyder. After the demise of the said Elizabeth Snyder, I promise to pay one quarter of the income after all expenses have been deducted to Annie Depken Heiser and Emma E. Depken, sisters, that is, one quarter of the income from the management and operation of the said Palomar Apartments. After the death of the said Elizabeth Ryland Snyder, and in the event of a sale of the said Palomar Apartments, I promise to pay one quarter of the proceeds of said sale to Annie Depken Heiser and Emma E. Depken. Dated: April 24, 1942. Lily K. McGraw."

Defendant gave no monetary consideration for the deed, but asserted that the consideration therefor was services she had rendered to plaintiff and to plaintiff's sister in taking care of them when they were ill, and for services to be rendered by her in taking care of the plaintiff.

At the time the deed was made and thereafter, the property was leased to one tenant for $300 per month. During the four months following the making of the deed there was no change

in the management of the property and defendant did not go to the property, nor collect the rent, during that time. In September, 1942, and monthly thereafter until October, 1943, the tenant, at plaintiff's request, sent his check in payment of the rent to the defendant. When the rent was received by defendant she gave her check for the amount so received to plaintiff. In October, 1943, plaintiff resumed the collection of the rent. After the deed was made plaintiff paid the taxes, the monthly installments of $110 on the encumbrance against the property, and the repair bills, except two hereinafter referred to. From the time the deed was made until the controversy herein arose, a period of approximately 17 months, the plaintiff went to the property about every week, and the defendant went to the property twice.

In September, 1943, plaintiff told defendant that she, plaintiff, needed more income, that she desired to refinance the property so that she, plaintiff, would be required to pay only $75 per month instead of $110, and that she desired to borrow $2,500 from a bank and to include that amount as an additional encumbrance against the property. Defendant replied that she would not comply with plaintiff's request. Thereupon the friendly relationship between the parties ended. On October 8, 1943, the present counsel for plaintiff sent a letter to defendant stating that plaintiff desired to sell the property immediately if she could not refinance it. Prior to making the deed, according to plaintiff's testimony, plaintiff and defendant had conversations relative to selling the property, and plaintiff told defendant to sell the property "when she could for not less than a certain sum."

In October, 1943, after the controversy had arisen, defendant caused repairs to be made to the exterior walls of the building and paid $750.50 therefor from her own funds. On November 5, 1943, plaintiff's counsel sent another letter to defendant stating that he desired to confer with defendant, particularly with reference to a sale of the property.

On November 12, 1943, plaintiff served a written notice of rescission upon defendant, which notice was as follows: "Notice of Rescission. To Lily K. McGraw: You will please take notice that the undersigned, Elizabeth Snyder, does hereby rescind any and all agreements heretofore made by her with you and under and by virtue of the terms of which she conveyed to you the real property known as the Palomar Apart-

ments, 979 South Oxford Avenue, Los Angeles, California, and more particularly described as follows: [Description]. You will further take notice that the undersigned offers to restore to you everything of value which she has received under the agreement, upon condition that you do likewise. Dated this 12th day of November, 1943. Elizabeth Snyder. Faries & McDowell, By C. E. McDowell, Attorneys for Elizabeth Snyder.''

In January, 1944, defendant installed a new roof on the building and paid $350 therefor from her own funds.

The property here involved was acquired by plaintiff in 1936. Plaintiff was 87 years of age when the deed to defendant was made. The deed was prepared by the attorney for plaintiff (other than present counsel) and it was signed by plaintiff in his presence. Plaintiff and defendant had been good friends for several years prior to making the deed, and defendant had the confidence of plaintiff. They visited each other frequently over a period of several years. On many occasions, including practically every Sunday for a period of approximately four years preceding the controversy herein, plaintiff, upon invitation, was at defendant's home for dinner. When plaintiff's ankle was broken in 1926 she stayed at defendant's home about three weeks. About 1940, after plaintiff had been injured as a result of a fall, she went to defendant's home and remained there, under the care of defendant, about seven weeks. Plaintiff had lent money to defendant on several occasions in various amounts. The loans were repaid by defendant, except the last one of $150 which plaintiff declined to receive when defendant offered to pay it. According to plaintiff's testimony there had been reciprocal kindnesses between them, and the matter of assistance ''was not all one-sided.'' Plaintiff's sister lived at defendant's home for 18 months, during which time defendant rendered services in taking care of the sister. According to defendant's testimony such services were rendered at plaintiff's request. Plaintiff testified that she did not make such request. Although defendant testified that the sister owed her ''plenty'' at the time of the sister's death, she also testified that she owed the sister $72 which amount she paid to plaintiff after the death of the sister.

Defendant testified further, at the trial, that plaintiff said, at the time the agreement was made, ''I want to do just like I have been doing with the house,'' and that she wanted to

keep "managing the payments" on the house as she had done before. In her deposition, defendant testified that, at said time, plaintiff said she wanted the "management" of the property just as she had had before the deed was made. At the trial defendant said that the word "management" should not have been in the deposition, but it should have been that she would continue to pay the bills because she was receiving the income. Defendant also testified that she had not been willing to sell the property at any time, because plaintiff had told her when plaintiff gave the property to her that she wanted her to keep it for a home; and that plaintiff told her many times that she was going to give the apartment house to defendant.

Plaintiff testified that defendant told her on many occasions that a certain man, a friend with whom plaintiff had had real estate transactions, would try to get her property after her death, and that the way to keep him from getting it would be "a transfer to get it out of my name only, and not out of my jurisdiction—I do not know whether I should call it jurisdiction—but not out of my name." Plaintiff testified further that defendant had made so many disparaging remarks about the moral character of that man that she (plaintiff) did not want any of her property to go to a person of that kind; that she made the deed to prevent that man, and others who had been trying to get her property, from getting it; that she never told defendant that she would give the property to her; and that in addition to the provision in the agreement that her cousins (the Depken sisters) should get one-fourth of the property, she provided in her will that they should have the residue of her estate.

It was alleged in the complaint, among other things, that at and before the time the deed was made, plaintiff had great confidence in defendant; that defendant, for the purpose of persuading plaintiff to convey the property to her, represented that another friend would attempt to obtain title to the property upon the death of plaintiff; that plaintiff thereupon, upon the advice of defendant, for the purpose of preventing such other person obtaining her property, and by reason of her trust and confidence in defendant, did convey the property to defendant without any consideration therefor; that at the same time and as a part of the same transaction defendant executed the certain writing (hereinabove referred to as the agreement and the amendment thereto); that at said time

plaintiff was unable to read said writing and believed that it fully expressed the conditions on which she conveyed title to defendant; that plaintiff understood that the agreement provided she should have the management of the property thereafter in the same manner as she had theretofore had, and should she desire to sell the property it would be sold and the proceeds delivered to her, but if she did not sell it that, upon her death it would be held by defendant as the trustee for the purpose set forth in the agreement; that plaintiff desired and proposed to sell the property, but defendant refused to permit plaintiff to sell it and denied plaintiff's right to sell it; and that by reason of the refusal of defendant to comply with the terms of the agreement, the plaintiff rescinded any and all agreements theretofore had by her with defendant and served the notice of rescission (hereinbefore quoted) upon defendant.

The answer denied any trust relationship or representation as alleged in the complaint, and alleged that the deed was given for valuable and adequate consideration. It was alleged further in the answer that by reason of plaintiff's failure to join Annie Depken Heiser and Emma E. Depken as parties to the action that plaintiff was not entitled to institute or maintain the action.

The court found in substance that the allegations of the complaint, above mentioned, were true, except that it made no finding as to the representation alleged to have been made by defendant to induce plaintiff to make the deed, nor did it find that plaintiff was unable to read, but found that she was unable to read readily by reason of defective eyesight. The court also found that the conveyance of the property to defendant was in trust, and that the said agreement and amendment thereto (above quoted) constituted a declaration of an express trust under the terms of which, and not otherwise, the defendant held title to the property; that defendant had no right, title or interest in the property, except as such trustee and under the provisions of said trust; that under the provisions of said trust no power of sale was given to defendant, and plaintiff at all times retained the right to direct, control and authorize the sale of the property; that on November 12, 1943, plaintiff rescinded and revoked all agreements made by her with defendant, including said declaration of trust; that defendant had paid $1,100.50 from her own funds for repairing the property; that plaintiff was entitled to maintain the

action without joining Annie Depken Heiser and Emma E. Depken as parties; and that said declaration of trust was void under the provisions of sections 715 and 716 of the Code of Civil Procedure (apparently it was intended that this reference should be to the Civil Code)..

The judgment was that plaintiff was the owner of said real property subject to a lien of defendant for the repayment to her of said $1,150.50 (apparently it was intended that this amount should be $1,100.50, the total of $750.50 and $350) with interest at 7 per cent per annum from the dates when various payments, aggregating $1,100.50, were made.

Appellant asserts that the evidence was not sufficient to support the finding that plaintiff did not understand the agreement. The finding was not in that form, but was that plaintiff believed the document expressed fully the conditions on which she conveyed the title, and that she understood that the agreement provided that she could have the management of the property and receive the proceeds from the operation of the property in the same manner as she had theretofore. The evidence was sufficient to support that finding.

Appellant asserts that the conveyance was for a valuable consideration and that the finding to the contrary is without support in the evidence. The $300 which was paid to plaintiff each month, being the rent which was received from the property involved, was money to which plaintiff was entitled before the agreement was made. Defendant did not agree to pay the taxes, interest on the incumbrance or to make repairs. Appellant argues that the most valuable consideration was the board, care and attention furnished to plaintiff. The evidence as to the consideration and as to the reason for the conveyance was conflicting and different inferences might be drawn therefrom. There was evidence to the effect that there were reciprocal kindnesses between the parties. The evidence was sufficient to support that finding.

Appellant contends that no voluntary express trust was created or intended to be created by the parties. Her argument is that the word "trust" was not used in the deed, the agreement, the testimony, the complaint, or the notice of rescission; that the effect of the amendment to the agreement was to transform defendant's obligation from one to account for the proceeds of the apartment house to an unconditional promise to pay $300 per month until the property

should be sold or until plaintiff's death; that the plaintiff "no doubt preferred" the promise of defendant to pay $300 per month for life rather than an amount equivalent to the income, which might vary considerably, with the possibility of becoming nothing at all; and that it was the intention that defendant be rewarded for her services to plaintiff and to plaintiff's sister.

The complaint did allege, as above stated, that the plaintiff understood that if the property was not sold during plaintiff's life it would be held by defendant "as trustee." No particular language is necessary, however, in order to create a trust, and it is not necessary in order to create a trust that the word "trust" or the word "trustee" be used. (*Weiner* v. *Mullaney*, 59 Cal.App.2d 620, 631 [140 P.2d 704]; *Hardison* v. *Corbett*, 55 Cal.App.2d 310, 318 [130 P.2d 226].) "A voluntary trust is an obligation arising out of a personal confidence reposed in, and voluntarily accepted by, one for the benefit of another." (Civ. Code, § 2216.) Such personal confidence existed between plaintiff and defendant, and the transaction arose out of such relationship. Section 2222 of the Civil Code provides that ". . . a voluntary trust is created, as to the trustee, by any words or acts of his indicating, with reasonable certainty: 1. His acceptance of the trust, or his acknowledgment, made upon sufficient consideration, of its existence; and, 2. The subject, purpose, and beneficiary of the trust." Section 2221 of the Civil Code provides that ". . . a voluntary trust is created, as to the trustor and beneficiary, by any words or acts of the trustor, indicating with reasonable certainty: 1. An intention on the part of the trustor to create a trust, and, 2. The subject, purpose and beneficiary of the trust." ■ The agreement and the amendment to the agreement were executed by defendant at the time she received the deed, and those documents were a part of the deed transaction. The whole transaction as to the making of the deed, the agreement and the amendment negative any inference that plaintiff made an absolute conveyance of her property to defendant. The manner in which the property was managed and operated after the deed was made also negatives such an inference. Defendant went to the property only twice during a period of 17 months before the controversy herein arose, and she paid nothing to repair or maintain the property until after their friendly relationship had ended.

The evidence to the effect that other persons might try to obtain plaintiff's property indicated a purpose in making the deed. It does not appear that there was any reasonable basis why plaintiff "no doubt preferred," as appellant argues, an unconditional promise of defendant to pay $300 per month to plaintiff rather than the income from the property. The property had been producing $300 per month for years, and the prospect that it would continue to produce that amount was good—the tenant, according to the evidence, was a good one. On the contrary, as to the prospect of better financial security for plaintiff by having the promise of defendant to pay $300 per month, there was evidence that defendant had borrowed money at various times from plaintiff, that she owed money to plaintiff's sister, and that for some time there was an unpaid judgment against her. The evidence was sufficient to support the finding of the trial court that there was an express trust.

 The voluntary trust, not expressly made irrevocable by the agreement creating it, could be revoked by plaintiff. Section 2280 of the Civil Code provides: "Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee. When a voluntary trust is revoked by the trustor, the trustee shall transfer to the trustor its full title to the trust estate. . . ." Prior to 1931, when said section 2280 was amended, there was no right of revocation of a voluntary trust unless the right was reserved expressly. In *Fernald* v. *Lawsten,* 26 Cal.App.2d 552 [79 P.2d 742], under circumstances similar to those in the present case, except as to the language of the agreement, it was held (p. 560) that the trustor had the right to revoke the trust. It was also held therein (p. 559) that the record contained ample evidence to support the finding that the transaction constituted a voluntary trust, and that in construing the real nature of the agreement it was proper to admit evidence as to the circumstances and conditions (p. 563) under which the agreement and deed were executed.

 Appellant asserts that the effect of section 2280 of the Civil Code is limited by the provisions of section 2250 of the Civil Code which provides that: "The provisions of this chapter [Secs. 2250 to 2289, inclusive] apply only to express trusts, created for the benefit of another than the trustor, and in which the title to the trust property is vested in the trustee;

not including, however, those of executors, administrators, and guardians, as such.'' Plaintiff was not the only one to benefit by the trust herein. By the terms of the agreement Annie Depken Heiser and Emma E. Depken were to benefit from the agreement upon the death of plaintiff. One who creates a voluntary trust is not the sole beneficiary if he manifests an intention to create a contingent interest in others. (*Bixby* v. *Hotchkis,* 58 Cal.App.2d 445, 451, 452 [136 P.2d 597]; Restatement of Law of Trusts, p. 1039.) It is to be noted, however, that in *Fernald* v. *Lawsten, supra,* the trust agreement was for the sole benefit of the trustor, but the court held that the trust was revocable under said section 2280.

Appellant contends further that Annie Depken Heiser and Emma E. Depken, beneficiaries under the alleged trust, were necessary and indispensable parties and that the action could not be maintained without them as parties thereto. Under the provisions of said section 2280 a trustor may revoke a trust, within the provisions of that section, without the consent of the beneficiaries. Furthermore, those beneficiaries were not parties to the agreement, and they had no present interest in the property and would not have any interest therein until the death of the trustor. The trustor commenced the action. This contention of appellant is not sustained.

By reason of the above conclusions, it is not necessary to discuss the other contention of appellant to the effect that the transaction does not constitute a restraint upon alienation of the property.

The judgment is affirmed.

Desmond, P. J., concurred.

SHINN, J.—I concur. By the terms of section 2250 of the Civil Code, the succeeding sections of the chapter, including section 2280, apply only to express trusts created for the benefit of another than the trustor, and defendant argues that the provisions for revocation contained in the latter section are not applicable here because the trust was for the benefit of the trustor as well as for others. Under original section 2280, a trust could not be revoked by the trustor after its acceptance, except by the consent of all beneficiaries, unless the declaration of trust reserved the power of revocation by the trustor. The clear implication of the section was that a

trust could be revoked by the consent of all beneficiaries, which is the law generally in the absence of statutory limitations (Perry on Trusts and Trustees, 7th ed., vol. 1, § 104), and there are none in California. If the trustor had been the sole beneficiary, she could have revoked the trust (*Bradbury* v. *McClure* (1892), 93 Cal. 133 [28 P. 777]; *Fernald* v. *Lawsten* (1938), 26 Cal.App.2d 552 [79 P.2d 742]), and consequently could revoke it as to her own interest as beneficiary, even though there were other beneficiaries. Under amended section 2280 she had the power to revoke it as to all other beneficiaries.

There are two additional grounds for affirmance of the judgment. The findings are subject to the construction that plaintiff executed the deed with the understanding, concurred in by defendant, that plaintiff, under the agreement, could direct a sale of the property at any time and that the entire proceeds would be paid to her. Consistently with plaintiff's testimony on the subject, which was meager, the writings signed by defendant and the circumstances of the case tended strongly to prove that plaintiff had such an understanding and that both parties so understood the writings. As plaintiff had the right to require the property to be sold, she had a right to revoke the trust, since the sale of the property and the payment of the proceeds to her would revoke or terminate it.

The second ground is that the findings established defendant's relation as trustee of a constructive trust. She refused to allow a sale of the property and thus violated her promise, which was a material inducement for the transfer of the property to her. Under these circumstances a court of equity will decree the property to be held in trust and direct that it be reconveyed. (*Lyttle* v. *Fickling* (1945), *ante*, p. 383 [164 P.2d 842].) Any and all adverse claims of defendant under the deed and the agreement were vitiated when it was established that her only interest in the property was that of a trustee under a constructive trust.

A petition for a rehearing was denied January 26, 1946, and appellant's petition for a hearing by the Supreme Court was denied February 25, 1946.