[Civ. No. 4432.  Third Appellate District.—March 14, 1932.]

E. G. WOOLSEY et al., Appellants, v. WILLIAM WOOLSEY, Individually, etc., Respondent.

William G. Snyder for Appellants.

Ralph McGee for Respondent.

THOMPSON (R. L.), J.—This is an appeal from a judgment which was rendered in favor of the defendants in an action instituted to declare a trust in a joint savings bank account which was deposited by Mary Elizabeth Woolsey, during her lifetime, to the credit of herself and her husband. The cause was tried with a jury, which rendered general and special verdicts favorable to the plaintiffs. On the theory that these verdicts were merely advisory, they were rejected, and adverse findings favorable to the defendants were adopted by the court in accordance with which a judgment was thereupon rendered.

The appellants contend that the complaint alleges an action at law in the nature of *assumpsit,* and that the findings of the jury were therefore binding upon the court. It is also asserted the findings and judgment are not supported by the evidence, and that the court erred in its rulings in the course of the trial.

The amended complaint alleges that George Woolsey and Mary Elizabeth Woolsey were husband and wife; that the

plaintiffs are the children of Mrs. Woolsey as the issue of a former marriage; that in the lifetime of these spouses and during their coverture Mrs. Woolsey "was possessed of . . . separate property consisting of certain cash", regarding which they "entered into a trust agreement . . . whereby it was provided that said property . . . should be placed on deposit in a bank in a joint tenancy trust fund account . . . during her lifetime", subject to her right to draw upon the account or dispose of the balance thereof by will, but "in the event said fund or any part thereof should remain undisposed of at her death . . . he would hold . . . what then remained of said fund in trust for her children . . . and that he should pay said fund over to her children during his lifetime . . . or that he should provide for same in his will, so that, upon his death, the children . . . should receive such fund, and that pursuant to such agreement, said Mary Elizabeth Woolsey placed said property on deposit in a bank account in the name of said George Woolsey and herself". It is then recited that the sum of $3,140 remained in that joint trust account at the time of the death of Mrs. Woolsey; that George Woolsey subsequently died December 15, 1929, and upon proceedings duly had his will was admitted to probate and the defendant William Woolsey was appointed and qualified as executor thereof. Finally, it is alleged that the will of George Woolsey, which named his son, the defendant William Woolsey, as sole legatee and devisee thereof, was procured by fraud and undue influence of the executor, by means of which he persuaded the testator to disregard and violate his said trust. The complaint prayed for a money judgment for the sum which remained in the hands of George Woolsey at the time of the death of Mrs. Woolsey, to be paid from his estate in due course of administration, and "for such other and further relief as may be meet and proper in the premises".

The essential allegations of the complaint were controverted by the answer. The cause was tried with a jury. Six special interrogatories were answered by the jury favorable to the plaintiffs. A general verdict was also rendered in their favor for the sum of $4,824.90. Upon motion of the defendants for a judgment notwithstanding the findings of the jury, the general and special verdicts were re-

jected. Contrary findings favorable to the defendants upon all the essential issues were adopted by the court. A judgment was rendered accordingly. From this judgment the plaintiffs have appealed.

The complaint clearly states an equitable cause of action for the enforcement of an alleged trust in the balance which remained in a joint bank account at the death of the depositor thereof. It is charged the plaintiffs became the beneficiaries of this trust fund, which was to be paid to them during the lifetime of the trustee or conveyed to them by the terms of his will. It is then recited that William Woolsey, the executor of the will of the testator, George Woolsey, became possessed of this trust fund by the exercise of fraud and undue influence by means of which he persuaded the testator to make his will in violation of the terms of said trust agreement.

The essential characteristics of this suit as they are disclosed by the pleadings and the record of the trial clearly indicate that it is an equitable action involving the establishment of an alleged trust fund which was acquired by means of fraud and undue influence. The facts disclosed by the record in *Cauhape* v. *Security Sav. Bank*, 127 Cal. 197 [59 Pac. 589, 590], were quite similar to those of the present case. It appears in the case last cited that Cora L. Floyd deposited $3,000 in the Security Savings Bank with instructions to pay the dividends therefrom to Mary Pond. This was done until the death of the depositor, at which time the payment of dividends was discontinued. The representative of Mary Pond brought suit against the bank, claiming title to the fund. The complaint alleged an indebtedness on the part of the bank for money had and received. The answer acknowledged the possession of the fund, but asserted that it was held subject to a trust for the payment of the dividends therefrom. The court said:

"It is evident that plaintiff brings suit simply to enforce an equity and not 'for money claimed to be due upon contract'. . . . The plaintiff seeks to recover a general money judgment *in satisfaction of a trust*. I think, therefore, the relief demanded in the complaint, as against the executors, the issues made by the answer of the executors, the facts

disclosed by the evidence, and the issues actually tried, all show that the action is in equity."

This language is peculiarly applicable to the present case. ■ Equity retains exclusive jurisdiction of actions to establish trusts and those which are founded on fraud. (*Reay* v. *Reay,* 97 Cal. App. 264, 270 [275 Pac. 533]; 10 Cal. Jur. 475, sec. 17.) ■ The nature of an action must ordinarily be determined from a consideration of the pleadings as a whole. In ascertaining the nature of an action, the prayer of a complaint may be considered, but it is not necessarily controlling. The averments of the pleadings, or even the theory upon which the cause is mutually tried, may determine its nature. (15 Cal. Jur. 335, sec. 12; *Cree* v. *Lewis,* 49 Colo. 186 [112 Pac. 326].) The prayer of the complaint in the present action is not in conflict with the theory of an equitable cause. The demand for a judgment for a specific sum is dependent upon the equitable establishment of the alleged trust. Moreover, the prayer demands "such other and further relief as may be meet and proper in the premises".

■ Since the present action is clearly equitable in its nature, the plaintiffs were not entitled to a trial by jury as a matter of constitutional right. (15 Cal. Jur. 331, sec. 11; 16 R. C. L. 209, sec. 27.) The court, in its discretion, was authorized to empanel a jury to assist in the determination of the facts, but the findings of the jury were purely advisory. (*Brichetto* v. *Raney,* 76 Cal. App. 232, 241 [245 Pac. 235]; *Schooler* v. *Williamson,* 192 Cal. 472, 478 [221 Pac. 195].) The court was therefore empowered to reject the general and special findings of the jury and adopt contrary findings of its own which are warranted by the evidence, pursuant to which a judgment was properly rendered. This is precisely what the court did. This procedure was not erroneous.

■ The sustaining of the demurrer to the original complaint was harmless. All the material issues which were presented by the original complaint are included in the amended complaint, except the allegations with relation to the filing of a probate claim for the amount of the joint bank account which remained at the time of the death of Mrs. Woolsey. These allegations which were omitted from the amended complaint do not change the nature of

the action. By the terms of the original complaint the suit was, and still remains, a mere equitable action to establish a trust in a joint bank account. Since the court found that the alleged trust agreement was not made and that Mrs. Woolsey never created a trust fund in that bank account it is immaterial whether the estate of George Woolsey remained as a party to the action. Unless the alleged trust fund were established, the plaintiffs had no interest in the estate of their stepfather. Therefore, the sustaining of the demurrer was harmless. Moreover, the amended complaint upon which the cause was tried reiterated all of the averments of the original complaint with relation to the alleged agreement to convey the bank fund by will to the plaintiffs, and repeats the assertion that the will of George Woolsey was procured by the fraud and undue influence of his son William. Finally it prays for judgment with directions that the amount thereof be paid from the estate in due course of administration. Evidence of the alleged agreement to will the property, together with the asserted illegality of the will, was adduced by the plaintiffs without restriction.

██ The alleged parol trust agreement is invalid to the extent that it purports to require the bequeathing of the bank fund by the terms of the will of George Woolsey, for the reason that it violates the provisions of subdivision 6, section 1624, of the Civil Code, and subdivision 6, section 1973, of the Code of Civil Procedure, both of which sections provide that:

"An [oral] agreement [is invalid] which by its terms is not to be performed during the lifetime of the promisor, or an agreement to devise or bequeath any property, or to make any provision for any person by will."

The foregoing statutes do not apply to written agreements, or to those concerning which "some note or memorandum thereof, is in writing and subscribed by the party to be charged, or his agent". Neither do they apply to oral agreements which were made prior to 1905, at which time they were not required by statute to be in writing. (*Staples* v. *Hawthorne,* 208 Cal. 578, 583 [283 Pac. 67].) It is neither contended in the present case that the agreement was in writing, nor that it was made before the statute required such contracts to be in writing. Nor was there

any such performance of the contract as would relieve it from the application of the statute.

■ The refusal of the court to permit the appellants to read in evidence the deposition of E. G. Woolsey, one of the plaintiffs, which had been taken in another proceeding, to wit, the contest of the will of George Woolsey, is assigned as error. Section 2022 of the Code of Civil Procedure provides in part:

"A deposition . . . may . . . be read in evidence by either party at any stage of the action or proceeding in which it was taken, or in any other action or proceeding between the same parties or their privies or successors in interest *upon the same subject.* . . . "

This suit was instituted to establish a trust. It involves an alleged oral agreement by the terms of which it is sought to prove that George Woolsey held an equitable title only to a joint bank account in trust for the plaintiffs who claim to be the legal owners thereof. It affects the title to personal property. Upon the contrary, the proceeding in which the deposition was taken was a contest of will upon the grounds of fraud and undue influence. It related only to the validity of a will. It may therefore not be said these two proceedings relate to the same subject matter so as to authorize the reading of the deposition in the present action under the provisions of section 2022, *supra.*

■ Moreover, the exclusion of the deposition was harmless. The witness, E. G. Woolsey, whose deposition was excluded, was examined at length at the trial. The transcript contains fifty pages of his testimony. There is nothing contained in the deposition affecting the merits of this cause which was not testified to by the witness at the trial, except the hearsay statement that the housekeeper told him that the defendant, William Woolsey, came out of his father's room "after a stormy session" and said, "I call this hell. . . . My father just told me that he proposed leaving half of *his property* to Lib's (Mrs. Mary E. Woolsey's) children, . . . and the other half to his children". This is not an admission that he held any of his wife's money in trust. Even though it was received in evidence it fails to supply even an inference which is favorable to the plaintiffs' cause in the present action.

■ ˙ Finally the appellants contend that the findings and judgment are not supported by the evidence. The court found, in effect, that Mary E. Woolsey was possessed of the sum of $2,152.88, which was her separate property; that after her marriage with George Woolsey, she voluntarily deposited this money on February 14, 1916, in a joint tenancy bank account to the credit of herself and her husband; that this joint account was not procured by the fraud or undue influence of her husband, or anyone else; that it was not subject to a trust for the benefit of her children, or otherwise; that there was no agreement that any part of this fund should be paid by her husband to her children or willed to them after her death; that both spouses drew against this fund at will until, at the death of Mrs. Woolsey, there remained but the sum of $1140.48; that prior to the death of George Woolsey this entire fund was exhausted by the payment of expenses "for the care and maintenance of the said Mary E. Woolsey"; that the will of George Woolsey was not procured by the fraud or undue influence of William Woolsey or anyone else, and that no part of this joint bank account remains in the estate of George Woolsey. Upon these findings, the court rendered judgment that the plaintiffs take nothing by their cause of action.

After a careful reading of the entire record, we are of the opinion there is sufficient evidence to support these findings. It was stipulated that on February 14, 1916, Mary E. Woolsey was possessed of $2,152.88, which she deposited with the American Trust Company Bank of San Francisco in a "joint tenancy account" to the credit of herself and her husband George Woolsey. The chief characteristic of a joint tenancy of real or personal property is the right of survivorship to the title of the property. (4 Words & Phrases, 3d ser., 598.) ■ Money which is deposited in a bank to the credit of two individuals in "joint tenancy" becomes the property of both persons, with the right of survivorship to the title thereof, at the death of either depositor. (*McDougald* v. *Boyd,* 172 Cal. 753 [159 Pac. 168]; California Bank Act of 1909 and amendments thereof, 1 Deering's Gen. Laws, p. 153, Act 652, sec. 15a.)

In the absence of satisfactory proof on the part of plaintiffs, of the alleged trust agreement affecting this fund, we

must assume George Woolsey owned the balance of the money, at the death of his wife, as survivor of the joint tenancy therein. The record is devoid of direct evidence that he ever agreed to hold it in trust for the benefit of plaintiffs. There is no substantial evidence his wife ever imposed such a condition, or that she ever requested him to do so. Both parties to this joint tenancy account are dead. It is significant that the plaintiffs were in frequent contact with their mother for many years before her death while the joint tenancy was maintained and neither of them pretend to say she ever spoke to them regarding this alleged trust. In truth, they admit that she never did speak of it. All that the record contains in support of plaintiffs' contention that a trust was imposed on this joint tenancy account is confined to two circumstances, first, the testimony of the plaintiff, E. G. Woolsey, that his mother said to her husband just before her death, "My will, my will, George," to which he replied, "Yes, my darling, I have your will, and I will take care of all that." It is claimed this infers that she had either attempted to convey the balance of this fund to her children by will, or that she desired to do so, which would amount to an effort to exercise control over the account. The will, however, was not produced, and its loss is not accounted for. Finally the three children of Mary Elizabeth Woolsey and their cousin testified to a conversation with George Woolsey, which occurred after the death of his wife, in which each of them say in substantially the same language that he addressed himself to the boys and said: " 'Boys, I must have some money, I am short of money. . . . Your mother has some money in the bank . . . It is in a joint account. . . . I wouldn't use it without your permission. . . . If you boys would consent, I will use that money of your mother's. . . . I am an old man, and if I don't pay this money back to you folks during my life, I will attend to it all in my will.' . . . So . . . he used it." It was said that he then admitted there was over $3,000 in the fund. No witness testifies when this discussion occurred. The evidence satisfactorily shows that there was but $1140.48 in this account at the time of the death of Mrs. Woolsey, November 7, 1924. The balance of the fund was withdrawn by George Woolsey and the entire account was closed by January 22,

1925. This was within a month and a half from the date of her death. 'The trial court observed the witnesses on the stand, and had a right to take into consideration their interest in the outcome of the litigation. In view of the fact that this statement refers to the ''money of your mother's'' and also admits ''It is in a joint account,'' the court may have reconciled it with the stipulation that it was a ''joint *tenancy* account'', by assuming George Woolsey thereby merely acknowledged that his wife originally owned the money and that he was therefore morally obligated to use it only with the consent of her children. Regardless of the construction of this language it merely raises a conflict with the admitted fact that the fund in controversy is the residue of a ''joint tenancy account''. The inevitable construction of the admitted fact that it was a joint tenancy account refutes the theory that Mrs. Woolsey's estate retained any title to the residue thereof after her death. The evidence of the existence of a trust in this bank account is extremely weak and unsatisfactory. Neither the merits of the case nor the record thereof will warrant this court in upsetting the findings of the trial court.

The judgment is affirmed.

Plummer, J., and Preston, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 13, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 12, 1932.