[L. A. No. 13819. In Bank.—July 2, 1934.]

A. M. ROSENFELD, Respondent, v. ROBERT MILLER, Appellant.

Willcox & Judson, George A. Judson, Heatherly, Orloff, Katz & Lewis, F. W. Heatherly, Joe Orloff and Oregon Smith for Appellant.

Loucks & Phister, Harry J. Miller, John Perry Wood and John F. McCarthy for Respondent.

PRESTON, J.—Plaintiff, a real estate broker, brought this action against defendant, a manufacturer of curled hair, for a commission, founded upon a written authorization signed by defendant, dated December 20, 1929, and purporting to authorize plaintiff to "negotiate for a tenant" for a

period of thirty days. The property involved was owned by defendant and was a vacant lot situated in San Pedro, California. It was proposed to cause to be erected thereon, at a cost of not less than $220,000, a theater building, with stores and offices in connection therewith.

The authorization went into some detail as to the character of the contemplated building, its seating capacity, the amount of the anticipated rentals, etc., and it contained the following further paragraphs: "(4) That all increases in taxes over the present tax on the portion of the building used as a theater shall be paid by the tenant." "(7) In event a lease is closed in accordance with the terms of this authorization, I hereby agree to pay you a commission in accordance with the Schedule of Commissions now in use by the Los Angeles Realty Board. (8) Stores and other buildings to be constructed along Pacific Avenue and Third Street frontage shall be included in the original plans and specifications but this authorization is to include only that portion of the premises to be used as a theater."

It should be noted that the above authorization was the last of a series of three such documents, the second and third being renewals of the first one, with perhaps some minor changes. During the thirty-day period mentioned, as well as during the terms of the previous letters of authority, plaintiff was in touch with the Fox West Coast Theaters, a corporation, as a prospective tenant for said proposed building. Thinking he had brought the parties to an agreement, a lease was prepared in December, 1929, by the attorney for defendant, the exact date not appearing. It was executed by defendant and his wife but upon presentation to the prospective tenant was by it rejected. Thereafter negotiations lapsed for a period of weeks—the exact time cannot be ascertained from the evidence. The testimony of plaintiff is in a confused state on this question but it is clear that a distinct period elapsed before renewal of any negotiations between the parties. For instance, plaintiff testified:

" . . . I talked to Mr. Miller in a few days after the first lease was rejected. I didn't come back afterwards and take it up with him in February." Again: "After this conversation the next time I talked to Mr. Sturzenacker or Mr. Miller was at least a month or more before the last

lease was signed"; and "I don't recall going down there and telling them I wanted to make another try and see if I could get another lease on the place signed."

Defendant testified that following the rejection of the first proposed lease, plaintiff told him the deal was off. His wife testified that plaintiff did not renew the negotiations until some time in February. It is also undisputed that plaintiff did not seek a renewal of his letter of authority as had been his practice—a practice he himself said was to protect him, among other things, in his claim for commissions.

Later, in the first part of March, 1930, plaintiff secured from the prospective tenant a lease which had been prepared by its attorneys and he again came in contact with defendant. On March 10, 1930, some four hours were spent in the office of defendant's attorney in the consideration of this proposed new lease, plaintiff being at all times present and also a Mr. Suggerman, who represented the prospective lessee. At the close of this conference of four hours, defendant executed the lease appearing in the record. However, it had at least two material provisions which differed from the written authorization above referred to: First, paragraph 4 respecting the assumption of the increase in taxes by the lessee was eliminated and, second, the lease included the stores and offices as well as the theater. The term of the lease, too, was different.

The evidence also shows without substantial conflict that during said four-hour conference it was definitely understood that the expense of construction of the building, the commission of plaintiff for his services, and attorney and architect fees, as well as other expenses, would be paid solely and alone out of a construction fund to be secured by a loan upon the property. Plaintiff himself produced defendant's attorney, who testified in this respect as follows: "The agreement was at the time this lease was drawn, that the plans and specifications and commission for Mr. Rosenfeld, if any, were all to be paid out of the financing. My fee was to be paid out of the financing when it was obtained. . . . The agreement was that the loan as eventually received should be sufficient to cover the cost of construction and all expense. . . . The commission was to be paid out of the loan, but whether to be repaid I don't know. . . . In the final analysis it was said at that time that Mr. Miller was

not to be out any money for financing expenses, plans or commission, or your fee, and that the financing on the building was to be sufficient to take care of all expenses. All expenses were to come out of the loan. A loan sufficient to take care of all expenses was to be secured.''

There is a conflict in the evidence as to whether plaintiff himself was to procure the loan but plaintiff nowhere in any of his testimony undertakes to controvert the plain testimony of the attorney, above quoted. That all expenses, including plaintiff's commission, were to come from a loan, was also testified to by the architect and several other witnesses. The evidence is abundant that thereafter all parties, including the procuring agent, attorney and architect, engaged in diligent and constant efforts to secure suitable financing for this building but that they and each of them wholly failed. The building was never constructed. The attorney has not received his fee nor has the architect received his. Plaintiff, however, was more aspiring and brought this action, seeking thereby to bring into the proceedings his said written authorization, which, by its own terms, expired on January 19, 1930, some fifty days prior to the meeting of the minds of the parties or the execution of the lease evidencing same. Plaintiff had findings and judgment in his favor in the court below and defendant appealed.

Since the case of *Wilson* v. *Sturgis*, 71 Cal. 226 [16 Pac. 772], the general rule has been that unless the failure to secure a purchaser or lessee upon terms proposed and within the time provided is due to the ''negligence, fraud, or fault'', of the owner, the agent may not recover upon his contract. This rule has been steadfastly adhered to as shown by the following cases: *Zeimer* v. *Antisell*, 75 Cal. 509 [17 Pac. 642], *Ropes* v. *Rosenfeld's Sons*, 145 Cal. 671 [79 Pac. 354], *Hicks* v. *Post*, 154 Cal. 22 [96 Pac. 878], *Brown* v. *Mason*, 155 Cal. 155 [99 Pac. 867, 21 L. R. A. (N. S.) 328], and *Cline* v. *Carpenter*, 83 Cal. App. 792 [257 Pac. 459].

An exact parallel to the case at bar is the case of *Howard* v. *Burrow*, 77 Cal. App. 4 [245 Pac. 808], a case where the plaintiff was denied a recovery even though, after expiration of the stipulated period of agency, he actually participated in proceedings which, it was assumed, resulted in a binding

lease. In fact, the broker was named as the procuring cause in the written agreement between the parties. This court denied a petition for transfer in said cause.

Respondent, however, relies upon three cases to bring the present case within an exception to the above rule: *Estes* v. *Hotchkiss*, 63 Cal. App. 284 [218 Pac. 605], *Umphray* v. *Hufschmidt*, 73 Cal. App. 140 [238 Pac. 749], and *Moore* v. *Borgfeldt*, 96 Cal. App. 306 [273 Pac. 1114].

The case of *Estes* v. *Hotchkiss, supra,* is of no value in this inquiry as there, after the expiration of the time limit in the agency agreement and after the agent had performed later services in the matter, and secured a binding contract of sale and purchase, the defendant gave him a new letter of authority which confirmed and modified the previous agreement and it was upon this latter agreement that a recovery was sustained.

The case of *Moore* v. *Borgfeldt, supra,* is likewise of little importance, for there, during the life of the agency agreement, the agent produced a purchaser ready, able and willing to buy upon the terms imposed, but because the owner was not ready to carry out his part of the bargain, negotiations, in which the agent actively participated, were continued after the expiration of the prescribed time and said agent finally secured a sale upon better terms for his principal.

Under the doctrine of such cases as *Twogood* v. *Monnette*, 191 Cal. 103 [215 Pac. 542], the commission was earned during the life of the contract and whatever was said in the opinion about waiver was unnecessary to a decision.

The case of *Umphray* v. *Hufschmidt, supra,* is predicated upon the fact that negotiations of the broker continued without interruption, with the sanction of the owner, and within a few days an agreement was made on substantially the identical terms named in the agent's undertaking. It was there held in view of these two elements that a waiver was properly made.

But here, as already pointed out, the negotiations lapsed for a considerable time. The custom of renewing the agency contract was not indulged; the lease as finally executed differed materially from that contemplated by the letter of authority and at least elimination of the item of taxes made the lease more burdensome to defendant owner.

But more than this, as also pointed out above, the express understanding with plaintiff was that unless a loan on the property sufficient for all purposes was secured, he was to receive no commission. Whether it had been previously so understood is immaterial, for it was then made plain that unless and until the deal was properly financed, plaintiff was not to receive any commission. It follows that the finding of the court that plaintiff performed the written contract is unsupported by any competent evidence. This conclusion makes it unnecessary to discuss the other points made by appellant.

The judgment is reversed.

Curtis, J., Langdon, J., Shenk, J., and Waste, C. J., concurred.

Rehearing denied.