[Civ. No. 17752.   Second Dist., Div. Three.   Dec. 28, 1950.]

LELAND M. FORD, Appellant, v. PALISADES CORPORA-
TION (a Corporation), Respondent.

Edgar F. Hughes and Raymond Tremaine for Appellant.

O'Melveny & Myers, Louis W. Myers, Pierce Works and John Whyte for Respondent.

VALLÉE, J.—Appeal by plaintiff from an adverse judgment in an action to recover a broker's commission.

September 18, 1944, plaintiff and defendant entered into an agreement in writing which read:

"Mr. Leland M. Ford
15821 Sunset Boulevard
Pacific Palisades, Calif.

Dear Sir:

"In consideration of the services to be rendered by you, we hereby agree to employ you as our agent for the period ending September 6, 1945, to find a puchaser for the so-called beach property, owned by this corporation, consisting of approxi-

mately 2411 feet, located on the Roosevelt Highway immediately west of the Will Rogers State Beach, in the City of Los Angeles, legal description of which is attached hereto, and we hereby grant you the sole and irrevocable right to sell said property within said period for the sum of one hundred and seventy five dollars ($175.00) per lineal foot.

"In the event said property is sold within said period, we agree to pay you a commission of 10% of the sales price.

"The sale of the property in any event shall be subject to the approval of the holders of the majority of the outstanding stock of the corporation, and we shall have no liability to you, nor to any purchaser, unless such sale is so approved.

"It is understood that you shall not, without our prior written consent, assign this agency or any of your rights thereunder."

August 22, 1945, the parties extended the terms of plaintiff's employment and modified the agreement of September 18, 1944, by a writing which read:

"This will confirm that at a meeting of the Board of Directors of this corporation, held on August 7, 1945, a motion was passed extending for seven (7) months the exclusive agency agreement on the 2411 feet of beach frontage owned by this corporation, given to you on September 18, 1944, and originally expiring on September 6, 1945, subject to the elimination of any stated sales price; all other terms and conditions to remain the same."

The term of plaintiff's employment under the writings expired April 6, 1946. Defendant sold the property to the State of California on October 1, 1947. The complaint alleged that the period of employment was extended by oral agreement and facts which plaintiff claims estop defendant from invoking the statute of frauds. The answer pleaded the statute of frauds. (Civ. Code, §§ 1624, subd. 5, 1698; Code Civ. Proc., § 1973, subd. 5.)

The court found: The employment of plaintiff as set forth in the writings. The employment terminated on April 6, 1946, and was not thereafter renewed or extended. Plaintiff at all times after April 6, 1946, was, and he knew he was, without authority to represent defendant. Defendant made no promise, oral or otherwise, to extend plaintiff's employment or to pay him any commission upon the consummation of any sale subsequent to April 6, 1946. Plaintiff did not rely upon any such promise. On June 21, 1946, plaintiff requested defendant to extend his employment. The request was denied .

by defendant on August 9, 1946, and plaintiff was notified to that effect on August 10, 1946. Activities engaged in by plaintiff with reference to the subject property, or the sale thereof, subsequent to April 6, 1946, were voluntary and unauthorized insofar as defendant is concerned. The state was not ready or able either to consummate the purchase of the property or to negotiate as to price at any time prior to August, 1947. Plaintiff neither found nor produced the state as a purchaser ready, willing and able to buy the property upon terms acceptable to defendant. Plaintiff was not the procuring cause of the sale which was ultimately negotiated by defendant at a price of $225 a front foot. Defendant neither waived the expiration date fixed in the writing nor is it estopped to deny such waiver or otherwise. Defendant did not become, and is not, indebted to plaintiff for services rendered. The causes of action asserted by plaintiff are barred by the statute of frauds.

The claim is that the findings from which the court concluded that defendant is not estopped to invoke the statute of frauds are unsupported by the evidence. The claim is groundless. The appeal is argued at great length in appellant's briefs as though we were the trier of fact. ▆▆ Our power begins and ends with a determination as to whether there is *any* substantial evidence to support the findings. (*Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367, 370 [210 P.2d 757].)

▆▆ Mr. Esberg, president of defendant, Mr. Malouf, vice-president, and Mr. Smith, a director, were the active representatives of defendant in the effort to sell the property to the state. The State Park Commission is the agency of the state charged with the acquisition of ocean beaches. (Pub. Resources Code, § 5015.) Plaintiff was at all times aware of the necessity of a written agency agreement. About a week before April 6, 1946, he told Mr. Smith that his contract was about to expire, that he could not collect a commission without something in writing, and that he should have an extension. Mr. Smith did not say anything about keeping the agency alive but told plaintiff to write to the board of directors, which he did on June 21, 1946. Plaintiff talked to Mr. Malouf in April, 1946, about extending his authority. Mr. Malouf asked him if he had talked to Mr. Smith. Plaintiff replied that he had, and that Mr. Smith had suggested he write to the board and "it seemed like a pretty good thing to do."

Mr. Esberg told plaintiff on August 10, 1946, that the board

had decided not to renew his contract, and that plaintiff then said, " 'That is too bad, I don't think that is fair,' something to that effect. Then he said, 'Well, now, listen, Esberg, the State Commission has a meeting slated for the 15th of next month at which I feel quite sure this thing is going to be put over, and do you object to my going to that meeting?' I said, 'Mr. Ford, I have no objection to your doing anything you want, you are free, white, and 21, but you don't go there as a representative of the company, if you go there you go of your own volition.' So he said, 'How about my commission, Esberg?' I said, 'Well, listen, Mr. Ford, the question of your commission is a matter that you will have to depend entirely upon the attitude and sense of fairness and decency of the Board of Directors, I can make you no promise, I am not in a position to do so if I wanted to, and you will have to depend entirely on what the attitude will be after the sale goes over.' " Plaintiff said, " 'I am going to be a good fellow, I will help you fellows any way I can.' " The treasurer of defendant who was present at this conversation testified that "Mr. Ford asked about his commission in case of a sale of the property to the State, and Mr. Esberg told him he had no authority to extend or to promise him anything, he would have to rely totally on the judgment of the board of directors as to whether he would be compensated if and when the property was sold." Plaintiff's testimony as to this conversation was to the same effect.

Plaintiff testified that on a number of occasions after August 10, 1946, he asked Mr. Smith and Mr. Malouf for a written extension. He was not given one. The State Park Commission had a meeting on January 31, 1947. A few days before the meeting, plaintiff called Mr. Malouf and asked whether he thought he (plaintiff) should attend the meeting. Mr. Malouf testified he told him "he no longer represented the corporation so I couldn't tell him to attend the meeting as our agent, and I wouldn't, but what he would do as a private citizen was up to him, the Park Board meetings were public, and anybody could attend them." Plaintiff replied, "Well, I will go to the meeting anyway."

Mr. Malouf and Mr. Smith each testified that he did not at any time tell plaintiff that his written agreement should or would be extended; or that he was not to worry about his commission; or that his commission would be paid whether he had a writing or not; or that there was no reason why his extension should not be granted; or that the company would

give him an extension; or that he could trust the company with reference to the matter of his commission or of obtaining an extension; and that he did not ask plaintiff to do anything on behalf of the corporation after April 6, 1946. Mr. Smith also testified that on June 19, 1946, he told plaintiff that he (plaintiff) was "through with the company"; and that about August 10, 1946, plaintiff "informed me that Mr. Esberg had informed him the corporation had denied an extension. . . . I said, 'Yes, that is right.' And he says, 'Well, Andy, I have had forty-four lawsuits on commissions . . . And I expect to get a commission on this deal.' I said, 'Lee, you have no agreement, you have made no sale.' And he says, 'Well, I will sue the corporation.' " Prior to the January meeting of the State Park Commission, plaintiff called Mr. Smith and said he wanted to go to the meeting. Mr. Smith told him "he didn't represent the corporation, he had no authority whatever, if he did go he did it on his own as a citizen and a taxpayer," and "I told him that he was not to go on our behalf to the January 31st meeting, he did not represent us, he had no authority to act for us, the Board of Directors had denied him any authority to act on behalf of the Palisades Corporation." From time to time after April 6, 1946, plaintiff called Mr. Smith and asked what was going on. Mr. Smith told him, "Well, Lee, I don't know why you are working, you have no authority, you do not represent the Palisades Corporation."

The State Park Commission held a meeting in July, 1947. Mr. Esberg testified, " [W]e were at this meeting, and before the meeting, Mr. Ford came up to me and said, 'Esberg, I think I want to address the Park Board about this matter.' I said, 'Listen, Mr. Ford, I hope you won't do it, because if you address the Park Board as purporting to be a representative of the Palisades Corporation, I will feel obliged as president to get up and tell the Park Board that you don't represent the Palisades Corporation, so I hope you won't make that necessary.' " Mr. Esberg also testified that the only conversation he had with plaintiff about "the commission" was the one he had on August 10, 1946.

The related evidence adequately supports the findings. The court was also warranted in inferring that plaintiff did not rely on any asserted promise or statement of the representatives of defendant; that he was merely a volunteer in any activity he engaged in after April 6, 1946. On a number of occasions beginning about a week prior to April 6, 1946, he importuned Mr. Smith and Mr. Malouf for a written extension, thus

negativing any idea of reliance on asserted oral promises or statements. From August 10, 1946, plaintiff repeatedly threatened defendant with suit unless his commission was paid in full.

Our comment in *Riesenberg* v. *Riesenberg*, 97 Cal.App.2d 714, 716 [218 P.2d 577], is applicable: "What . . . [plaintiff] asks, in effect, is that we try the case *de novo* on the record, reject nearly all of the findings of the trial court, and substitute contrary findings of our own. There is much evidence which would have supported contrary findings. That the trier of fact rejected that evidence does not impeach the soundness of his conclusions. . . . [Plaintiff] has failed to establish any greater grievance here than . . . [he] might in any case where the evidence would support a conclusion either way but where the trial court has decided it to weigh more heavily for the opposite party. Such a choice between two permissible views of the weight of the evidence is not error."

■ The complaint contains a count for the reasonable value of services performed. Defendant argues that he is entitled to recover on this count. The contention cannot be sustained. Plaintiff testified to services performed before and after April 6, 1946. The court found that as to each and all of his activities after April 6, 1946, he "was acting solely as a volunteer," and that after that date he "was wholly without authority to act for, represent or deal for or on behalf of defendant, either as broker or agent with reference to the or any sale of said property or otherwise; nor did he do so," and that he knew he was without such authority. The sale to the state was consummated on October 1, 1947. Payment of a commission was conditioned on the bringing about of a sale prior to April 6, 1946. Obviously plaintiff was not entitled to recover on any theory of performance of the written agreements. Further, as the court found on substantial evidence, the state was at no time prior to August, 1947, ready or able to purchase the property. And, as the court found, plaintiff did not, as he alleged, find or produce the state as a ready, willing or able purchaser at any time. Nor did he induce the purchase by the state. The sale to the state was negotiated by defendant itself.

■ Unless the failure to secure a purchaser upon terms proposed and within the time provided is due to negligence, fraud or fault of the owner, a real estate broker may not recover upon his contract for commissions. (*Rosenfeld* v. *Miller*, 1 Cal.2d 206, 209 [33 P.2d 1013].) ■ The implied finding

necessarily is that the failure to sell to the state within the time fixed by the written agreement was not due to the negligence or fraud or fault of defendant. The finding is supported by the evidence. ▮ A broker can only recover in accordance with the terms of his employment. (*McGill* v. *Fleming*, 32 Cal.App.2d 601, 604 [90 P.2d 341].) ▮ The time limited in the contract cannot be extended by an oral agreement. (*Rice Lands etc. Co.* v. *Blevins*, 61 Cal.App. 536, 542 [215 P. 402].) ▮ . Where an agreement to pay a broker's commission is unenforcible because of the statute of frauds, he cannot recover the reasonable value of time or money laid out under the agreement. (*White* v. *Hirschman*, 54 Cal.App.2d 573, 575 [129 P.2d 430] ; *Colburn* v. *Sessin*, 94 Cal.App.2d 4, 6 [209 P.2d 989].) Defendant's agreement with plaintiff was to pay a commission in the event the property was sold within the period which expired April 6, 1946. The agreement expired by its own terms. In view of the fact that plaintiff did not bring about a sale within that period, and that he did not have an agreement in writing authorizing or employing him as agent or broker after April 6, 1946, he cannot recover the reasonable value of his services performed prior to, nor for activities after, that date.

Plaintiff claims that he was wrongfully deprived of a trial by jury. He demanded such a trial. At the opening of the trial and before the impanelment of the jury, defendant moved for a trial to the court without a jury of the equitable issue of estoppel to plead the statute of frauds. Ruling on the motion with the right to renew during the trial was reserved. The cause proceeded to trial for 2½ days when defendant renewed the motion. The motion was granted. Counsel for plaintiff then said: ''Well, in view of your Honor's ruling, we cannot see any good purpose in retaining the jury, and we will consent that the jury be excused.'' The court then discharged the jury and the trial was resumed and completed by the court sitting without a jury.

The gist of plaintiff's action is equitable. He alleged the making of the written agreements and that the sale was not consummated until October 1, 1947. He did not allege that he produced a purchaser ready, willing and able to buy the property within the period fixed by the written agreement. The only basis of recovery was his allegation ''that by reason of the above alleged facts, defendant waived the expiration date of the written exclusive contract and is estopped to deny such waiver, and is also estopped to accept the fruits of

plaintiff's labor without paying the plaintiff therefor." ■ The question of estoppel to plead the statute of frauds made by the complaint is an equitable issue. (*Sellers* v. *Solway Land Co.*, 31 Cal.App. 259, 266 [160 P. 175]. See, also, *Halsey* v. *Robinson*, 19 Cal.2d 476, 482 [122 P.2d 11].) ■ There is no right to a trial by jury where the gist of the action is for the enforcement of a right cognizable only in equity. (*Mesenburg* v. *Dunn*, 125 Cal. 222, 223 [57 P. 887]; *Smith* v. *White*, 215 Cal. 204, 206 [8 P.2d 1030]; *Connell* v. *Bowes*, 19 Cal.2d 870 [122 P.2d 456]; *Woolsey* v. *Woolsey*, 121 Cal.App. 576, 581 [9 P.2d 605]; *Olson* v. *Foster*, 42 Cal.App.2d 493, 497 [109 P.2d 388]; *Bixby* v. *Hotchkis*, 58 Cal.App.2d 445, 454 [136 P.2d 597].) The court did not err in trying the issue of estoppel without a jury.

■ Trial by jury may be waived by oral consent, in open court, entered in the minutes or docket. (Code Civ. Proc., § 631, subd. 3.) It has been held that the oral consent must be entered in the minutes or docket. (*People* v. *Metropolitan Surety Co.*, 164 Cal. 171, 178 [128 P. 324, Ann.Cas. 1914B 1181].) In the latter case, it was said that the purpose of the requirement was to furnish record evidence of a consent which would otherwise merely rest on parol proof. ■ In the present case, the findings specifically recite what took place, and state that plaintiff "consented to the discharge of said jury." We think this was sufficient compliance with the statute. Further, the reporter's transcript shows precisely that plaintiff waived a trial by jury by oral consent. (Cf. *Farnsworth* v. *Hunter*, 11 Cal.2d 27, 32 [77 P.2d 840].) The purpose of the statute was served. Assuming, without deciding, that, as appellant argues, the limitation of time fixed in the writings may be waived by the seller continuing with the deal, through the same broker, after the expiration of the time stated in the writings and that plaintiff was entitled to a trial by jury on the question of waiver, it is clear that he voluntarily consented to the trial of that question by the court without a jury.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied January 16, 1951, and appellant's petition for a hearing by the Supreme Court was denied February 19, 1951.