[L.A. No. 30154. In Bank. Jan. 21, 1974.]

JOHN W. RAEDEKE et al., Plaintiffs and Appellants, v.
GIBRALTAR SAVINGS AND LOAN ASSOCIATION,
Defendant and Appellant.

666

COUNSEL

William T. Brandlin for Plaintiffs and Appellants.

Kellett, Oksner & Spada, Brazelton, Clifford, Smith & Oksner and Chester M. Oksner for Defendant and Appellant.

OPINION

BURKE, J.—Plaintiffs John and Alicia Raedeke appeal from a judgment of the Los Angeles Superior Court awarding them $14,000 against defendant Gibraltar Savings and Loan Association in an action based upon an alleged wrongful foreclosure of property owned by plaintiffs. Although the jury awarded plaintiffs $475,000 compensatory damages by reason of Gibraltar's conduct, the trial court treated the verdict as advisory only and reduced plaintiffs' award to $14,000. We have concluded that plaintiffs' suit was an action at law, not equity, and that the trial court erred in treating the jury verdict as advisory. Accordingly, we reverse the judgment with instructions to reinstate the jury verdict.

1. *Plaintiffs' Complaint*

In their third amended complaint, plaintiffs set forth four causes of action, namely, (1) to set aside a trustee's foreclosure sale of real property owned by them, (2) to recover damages for conversion of personal property, (3) to recover compensatory and punitive damages for fraud, and (4) to recover damages for breach of contract. In essence, the facts alleged to support recovery are as follows: In August 1964 plaintiffs executed and delivered an installment promissory note in the amount of $730,000 secured by a first deed of trust on the Parkview Motor Hotel and Restaurant in North Hollywood. Upon plaintiffs' subsequent delinquency, beneficiary Gibraltar recorded a notice of default and an election to sell the property, and scheduled a trustee's sale for March 29, 1966. At plaintiffs' request, and on March 22, Gibraltar orally agreed to postpone the sale until April 13. Subsequently, on April 8, Gibraltar allegedly orally agreed to a further postponement, after plaintiffs informed Gibraltar that they had been negotiating with other prospective purchasers and would be able to sell the premises. In the words of plaintiffs' complaint, ". . . [Gibraltar's agent] informed the plaintiff JOHN W. RAEDEKE that he would grant an additional continuance of the Trustee Sale if said plaintiff had a responsible prospective purchaser for the said property; that . . . [Gibraltar's agent] stated

on that occasion and on numerous other occasions to plaintiff . . . 'all we want out of this property is our money and we will cooperate with you in any manner that we can.' "

Notwithstanding Gibraltar's alleged oral agreement, and in spite of the fact that plaintiffs allegedly procured a willing buyer and so advised Gibraltar, Gibraltar refused to continue the trustee's sale, which took place as scheduled on April 13, 1966. Gibraltar was the sole bidder on the property, and acquired it for an amount equal to the unpaid balance on plaintiffs' loan, plus interest and costs. Thereafter, Gibraltar allegedly converted various items of personal property on the premises belonging to plaintiffs.

The alleged conversion formed the basis for plaintiffs' second cause of action. The alleged refusal to continue the trustees' sale constituted the basis for plaintiffs' first, third and fourth causes of action. As the allegations of these latter three causes of action are relevant to our determination regarding plaintiffs' right to a jury trial in this case, we review those allegations in greater detail.

As noted above, plaintiffs' first cause of action sought to set aside the trustee's sale. Plaintiffs alleged that Gibraltar promised to postpone the sale, that plaintiffs reasonably relied on that promise and, based on that reliance, took no steps to refinance the property, borrow money to cure their default or otherwise act to preserve their equity; that Gibraltar reasonably expected or should have expected plaintiffs to rely on the promise; and that Gibraltar's conduct was unreasonable, oppressive and unfair. Plaintiffs sought to set aside the sale, but did not pray for damages.

In their third cause of action, for fraud, plaintiffs reincorporated most of the preceding allocations and further alleged that Gibraltar's promise was known to be false when made. Plaintiffs sought compensatory and punitive damages for Gibraltar's alleged fraud.

In their fourth cause of action, for breach of contract, plaintiffs again incorporated many of the allegations made in the first cause of action, including allegations that Gibraltar's promise to postpone the sale led plaintiffs to rely thereon to their detriment. Plaintiffs sought compensatory damages for Gibraltar's alleged breach of contract.

Gibraltar's answer denied, among other allegations, that a promise had been made, that plaintiffs had relied on it to their detriment, or that plaintiffs had procured a responsible prospective purchaser.

## 2. *Proceedings at Trial*

As discussed in greater detail below, to insure themselves of a trial by

jury, plaintiffs voluntarily abandoned their claim in equity, under the first cause of action, to set aside the trustee's sale. Plaintiffs further dismissed their third and fourth causes of action, and chose to rely solely upon the allegations in the first cause of action to support a claim for damages for breach of Gibraltar's oral promise to continue the sale. A jury was impaneled and the trial proceeded, although the trial court indicated that, as to the "equitable issues" remaining in the case, the jury's verdict would be advisory only.

The jury returned a verdict in plaintiffs' favor in the amount of $475,000. The jury also made special findings to the effect that (1) Gibraltar did promise to postpone the sale, if plaintiffs had a responsible, prospective purchaser for the property, (2) plaintiffs did procure such a purchaser prior to the sale, (3) plaintiffs relied to their detriment on Gibraltar's promise, (4) Gibraltar should have reasonably expected plaintiffs to be misled or lulled by the promise, and (5) plaintiffs were *not* misled or lulled by the promise into not taking any steps to borrow money to cure the default or sell or refinance the property. The jury also found that Gibraltar had converted plaintiffs' personal property in the reasonable value of $14,000.

The trial judge treated the jury's verdict as advisory only, and made its own findings regarding plaintiffs' first cause of action, namely, that (1) Gibraltar did not make a promise to postpone the sale if plaintiffs had a responsible prospective purchaser, and (2) plaintiffs were not misled or lulled into not taking any steps to borrow money, sell or refinance the subject property. The court adopted the jury's findings on the conversion cause of action and awarded damages to plaintiffs in the amount of $14,000.

Plaintiffs unsuccessfully moved for a new trial and to set aside the judgment, and then filed the instant appeal. Gibraltar filed a cross-appeal to challenge the $14,000 judgment.

### 3. *Plaintiffs' Right to Jury Trial*

■ If there were "equitable" issues in this case which were properly triable by the court, and if the resolution of those issues left nothing remaining to be tried by the jury with respect to plaintiffs' first cause of action, then the court had the authority to treat the jury's verdict and findings as advisory only. (See *Stearns* v. *Los Angeles City School Dist.,* 244 Cal. App.2d 696, 725-726 [53 Cal.Rptr. 482, 21 A.L.R.3d 164], and cases cited at p. 671, *infra.*)

From the foregoing analysis of the allegations of plaintiffs' complaint, it seems evident that plaintiffs originally sought both equitable and legal

relief based upon Gibraltar's alleged conduct. ■ An action to set aside a trust deed foreclosure is an equitable action and one in which the plaintiff ordinarily would have no right to jury trial. (*Rablin* v. *Greiner,* 4 Cal.2d 255, 257 [48 P.2d 696]; *Estudillo* v. *Security Loan etc. Co.,* 158 Cal. 66, 71 [109 P. 884]; see *Py* v. *Pleitner,* 70 Cal.App.2d 576, 579 [161 P.2d 393].) ■ On the other hand, a suit to recover damages for fraud or breach of contract is an action at law in which a right to jury trial ordinarily exists. (*Hutchason* v. *Marks,* 54 Cal.App.2d 113 [128 P.2d 573] [fraud]; *Philpott* v. *Superior Court,* 1 Cal.2d 512, 517 [36 P.2d 635, 95 A.L.R. 990] [fraud]; *Abbott* v. *City of Los Angeles,* 50 Cal.2d 438, 461-462 [326 P.2d 484] [breach of contract]; see Code Civ. Proc., § 592 [breach of contract].)

At trial, however, plaintiffs made an election of remedies in order to secure a trial by jury. In response to the trial court's statement of intention to "proceed with the equitable issues," plaintiffs' counsel voluntarily waived any right to set aside the foreclosure sale, stating that plaintiffs were going to proceed "on purely a question of law having to do with damages" under the various causes of action in their complaint. Clearly, plaintiffs' counsel appreciated the substantial risk that if the court tried the "equitable" issues first, plaintiffs might forfeit their right to a jury trial altogether. ■ It is well established that, in a case involving both legal and equitable issues, the trial court may proceed to try the equitable issues first, without a jury (or, as here, with an advisory jury), and that if the court's determination of those issues is also dispositive of the legal issues, nothing further remains to be tried by a jury. (*Connell* v. *Bowes,* 19 Cal.2d 870, 872 [123 P.2d 456]; *Jaffe* v. *Albertson Co.,* 243 Cal.App.2d 592, 609 [53 Cal.Rptr. 25]; *Richard* v. *Degen & Brody, Inc.,* 181 Cal.App.2d 289, 295 [5 Cal.Rptr. 263].)

Thus, plaintiffs' tactic in seeking damages only was aimed at removing the equitable issues from the case. Plaintiffs did not, however, simply dismiss their first cause of action. Instead, under the assumption that the factual allegations of the first cause of action were sufficient to justify an award of damages for violation of Gibraltar's oral promise to postpone the sale, plaintiffs voluntarily dismissed their third (fraud) and fourth (breach of contract) causes of action. As plaintiffs' counsel stated to the court ". . . that [the first cause of action], of necessity, includes the fourth cause of action for breach of an oral agreement not to foreclose. It is of necessity included in the first cause of action." This dismissal of the third and fourth causes of action occurred at the end of trial, after all the evidence had been received.

■■ Thus, when the smoke created by plaintiffs' various maneuvers had finally cleared, plaintiffs were left with (1) a cause of action for damages

for conversion, and (2) a cause of action for damages for breach of the oral promise to postpone the sale. As the relief sought in both causes of action was damages, and as the legal or equitable nature of a cause of action ordinarily is determined by the mode of relief to be afforded (*Philpott* v. *Superior Court, supra,* 1 Cal.2d 512, 516; *Paularena* v. *Superior Court,* 231 Cal.App.2d 906, 911-912 [42 Cal.Rptr. 366]), plaintiffs were entitled to a jury trial as a matter of right.

Gibraltar contends, however, that plaintiffs' first cause of action invoked the doctrine of promissory estoppel, a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced. (See *Youngman* v. *Nevada Irrigation Dist.,* 70 Cal.2d 240, 249-250 [74 Cal.Rptr. 398, 449 P.2d 462]; *Healy* v. *Brewster,* 59 Cal.2d 455, 463 [30 Cal.Rptr. 129, 380 P.2d 817]; Rest. Contracts, § 90.)[1] Under Gibraltar's view of the case, the trial court properly treated the issue of promissory estoppel as an equitable one for its consideration and, having found against plaintiffs on that issue, nothing in plaintiffs' first cause of action remained to be tried by a jury.

 It is true that in their first cause of action and throughout the trial, plaintiffs appeared to rely almost exclusively upon a promissory estoppel theory, namely, that Gibraltar made a promise to postpone the sale, that plaintiffs relied thereon to their detriment, being misled and lulled into a course of inaction, and that it would be unjust to allow Gibraltar to avoid its promise. Yet the pleadings and proof did not, of course, rule out a more traditional theory of recovery, namely, ordinary breach of contract.

As mentioned above, the doctrine of promissory estoppel is used to provide a substitute for the consideration which ordinarily is required to create an enforceable promise. This court has recently pointed out that "The purpose of this doctrine is to make a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange. If the promisee's performance was re-

---

[1]"Under this doctrine a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement. [Citations.]" (*Youngman* v. *Nevada Irrigation Dist., supra,* 70 Cal.2d 240, 249.)

In the instant case, the jury was instructed on promissory estoppel in language substantially identical to that quoted above. The jury was also instructed that under plaintiffs' first cause of action, plaintiffs had the burden of proving that Gibraltar promised to postpone the foreclosure sale, that plaintiffs were thereby misled or lulled into believing that the sale was postponed, causing them to rely thereon to their substantial detriment, and that injustice can be avoided only by enforcing the promise.

quested at the time the promisor made his promise and that performance was bargained for, the doctrine is inapplicable." (*Youngman* v. *Nevada Irrigation Dist., supra,* 70 Cal.2d 240, 249.) Plaintiffs' first cause of action, liberally construed, contains sufficient allegations to make total reliance upon the doctrine of promissory estoppel unnecessary, for plaintiffs alleged that Gibraltar promised to postpone the sale if plaintiffs procured a responsible prospective purchaser for the property. Plaintiffs' alleged procurement of such a purchaser could be found to constitute the bargained-for performance necessary to support Gibraltar's promise, without application of the equitable doctrine of promissory estoppel.[2]

Gibraltar contends, however, that an oral promise to postpone a foreclosure sale would be unenforceable under Civil Code section 1698, and that accordingly plaintiffs had no cause of action, legal or equitable, arising out of a breach of that promise. Section 1698 provides that "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." ■ We have held that if there exists sufficient consideration for an oral modification agreement, then full performance by the promisee alone would suffice to render the agreement "executed" within the meaning of section 1698. (*D. L. Godbey & Sons Const. Co.* v. *Deane,* 39 Cal.2d 429, 432 [246 P.2d 946]; see *Healy* v. *Brewster,* 251 Cal.App.2d 541, 551 [59 Cal.Rptr. 752]; *Weber* v. *Jorgensen,* 16 Cal.App.3d 74, 80-82 [93 Cal.Rptr. 668].) ■ In the absence of consideration, a gratuitous oral promise to postpone a sale of property pursuant to the terms of a trust deed ordinarily would be unenforceable under section 1698. (*Karlsen* v. *American Sav. & Loan Assn.,* 15 Cal.App.3d 112, 121 [92 Cal.Rptr. 851].)

■ Plaintiffs' alleged procurement of a responsible, prospective purchaser at Gibraltar's request would constitute good consideration for Gibraltar's promise, since such procurement was not originally part of the bargain between plaintiffs and Gibraltar, and constituted both detriment to plaintiffs (through the expenditure of time and energy negotiating with possible purchasers) and benefit to Gibraltar (through the potential substitution of a solvent purchaser in place of plaintiffs, rendering foreclosure unnecessary). Such detriment and benefit each would constitute

---

[2]Indeed, the jury's special findings in this case, set forth above, would indicate that the jury rejected plaintiffs' promissory estoppel theory, but, nevertheless, awarded damages on the basis of Gibraltar's breach of promise. The jury found that plaintiffs were not misled or lulled by Gibraltar, but that they did rely to their detriment upon its promise to postpone the sale. It seems likely that the jury therefore found that plaintiffs relied upon the promise by taking steps to procure a responsible, prospective purchaser for the property, a bargained-for reliance which rendered Gibraltar's promise enforceable.

"good consideration for a promise" in this state. (Civ. Code, § 1605; see Corbin, Contracts, § 192, at pp. 180-181; Rest. Contracts, § 84, subd. (c); *House* v. *Lala,* 214 Cal.App.2d 238, 243 [29 Cal.Rptr. 450]; *Anchor Cas. Co.* v. *Surety Bond Sav. & Loan Assn.,* 204 Cal.App.2d 175, 181-182 [22 Cal.Rptr. 278].)[3]

Therefore, unlike the cases relied upon by Gibraltar,[4] resolution of the instant case did not depend entirely upon the application of equitable principles; the doctrine of promissory estoppel was only one of two alternative theories of recovery.[5] Under the circumstances of this case, we con-

[3]As stated by Professor Corbin, ". . . if the bargained-for performance rendered by the promisee includes something that is not within the requirements of his pre-existing duty, the law of consideration is satisfied. It makes no difference that the agreed consideration consists almost wholly of a performance that is already required and that this performance is the main object of the promisor's desire. It is enough that some small additional performance is bargained for and given.

"Thus, if a creditor promises to give an extension of time, this promise is not enforceable if the only consideration is the debtor's payment of a part of his overdue debt or the debtor's promise to pay his debt on or before the end of the extension. . . . But if the debtor gives his pocket knife in addition as part of the consideration for the creditor's promise of extension, the promise is enforceable."

[4]For example, see *Jaffe* v. *Albertson Co., supra,* 243 Cal.App.2d 592, and *Ford* v. *Palisades Corp.,* 101 Cal.App.2d 491, 499 [225 P.2d 545]. *Jaffe* involved an estoppel to invoke the statute of frauds; the court noted that "The only basis for his [Jaffe's] legal claim for damages" was an estoppel theory. Accordingly, the trial court properly tried the estoppel issue without a jury. *Ford* likewise involved a claimed estoppel to invoke the statute of frauds; plaintiff's only basis for recovery was that defendant waived a contract term and is estopped to deny that waiver. As *Ford* pointed out "The gist of plaintiff's action is equitable." (P. 498.) As we have explained, in the instant case plaintiffs did not rely solely upon an estoppel theory; plaintiffs sought to avoid the statute of frauds by bringing themselves within the statutory exception for "executed" oral agreements (Civ. Code, § 1698).

Moreover, even as to plaintiffs' reliance upon promissory estoppel, there is some basis for holding that the action remained one at law. "The fact that equitable principles are applied in the action does not necessarily identify the resultant relief as equitable. [Citations.] Equitable principles are a guide to courts of law as well as of equity. [Citations.] Furthermore, the incidental adoption of equitable sounding measures to effect the application of equitable principles in an action at law, such as for damages, does not change the character of that action. [Citations.]" (*Paularena* v. *Superior Court, supra,* 231 Cal.App.2d 906, 912.)

[5]Gibraltar points out that, in reliance upon plaintiffs' dismissal of their fourth cause of action (breach of contract), Gibraltar withdrew certain jury instructions regarding that issue. First of all, it seems clear from the remarks of plaintiffs' counsel set forth above (p. 671) that plaintiffs did not intend to abandon a breach of contract theory; counsel assumed correctly that the allegations of the first cause of action were broad enough to encompass such a theory of recovery. Moreover, it does not seem reasonably probable that the withdrawn instructions could have affected the jury's verdict (see *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243]; *Skoglie* v. *Crumley,* 26 Cal.App.3d 294, 299 [103 Cal.Rptr. 205]), given the jury's special finding that Gibraltar promised to postpone the sale if plaintiffs procured a responsible, prospective purchaser. Gibraltar's instructions merely set forth certain general

clude that plaintiffs were entitled to a jury determination of the issues raised in both their first and second causes of action. Accordingly, the trial court erred in treating the jury's special findings and verdict as advisory only and in entering its own findings, conclusions and judgment thereon. Plaintiffs' motion for entry of judgment on the jury's verdict (Code Civ. Proc., § 664) and subsequent motion to set aside the judgment entered by the trial court (*id.,* § 663) should have been granted.

The judgment is reversed and the trial court instructed to enter a new judgment in plaintiffs' favor on the general verdict of the jury.[6] As the cause must be remanded to the trial court for further proceedings with respect to the reinstated judgment, Gibraltar's cross-appeal from the $14,000 judgment on plaintiffs' conversion cause of action is dismissed without prejudice.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.

---

rules regarding contract formation, modification and breach, including the requirements of mutual assent, consideration and definiteness. Although these rules might have assisted the jury in its determinations, it is not probable that a more favorable verdict would have resulted. The jury's findings disclosed the existence of a contractual arrangement between the parties which appears to meet as a matter of law the standards set forth in Gibraltar's instructions. Moreover, the instructions which were given (see fn. 1, *ante*) were sufficient to permit the jury to find in plaintiffs' favor on a simple breach of contract theory. As noted, those instructions submitted to the jury the questions whether Gibraltar made and breached the oral promise, and whether plaintiffs relied thereon to their detriment.

[6]Gibraltar will have the opportunity, of course, following entry of the new judgment, to pursue whatever remedies it deems appropriate, such as a motion for new trial, motion for judgment notwithstanding the verdict, or appeal. Having only decided that plaintiffs were entitled to a jury trial and that the jury's verdict now must be reinstated, we decline to review at this time the merits of that verdict or of the judgment which should have been entered thereon.