Filed 1/13/14  J.E. Lindsey, Inc. v. Cambria Community Services Dist. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| J.E. LINDSEY, INC.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CAMBRIA COMMUNITY SERVICES DISTRICT,<br><br>    Defendant and Respondent. | 2d Civil No. B242676<br>(Super. Ct. No. CV098052)<br>(San Luis Obispo County) |

J.E. Lindsey, Inc. (JEL) appeals the trial court's judgment in favor of Cambria Community Services District (the District) following the denial of JEL's petition for a writ of administrative and ordinary mandate (Code Civ. Proc., §§ 1085, 1094.5) and the dismissal of a complaint for damages.  JEL contends it is entitled to writ relief for the District's purported breach of an agreement to provide water and sewer services to two of JEL's planned residential developments.  JEL further contends it sufficiently stated claims against the District for breach of contract and inverse condemnation.  We affirm.

FACTS AND PROCEDURAL HISTORY

The District is a governmental entity with regulatory authority over water and sewer facilities in Cambria, an incorporated community in San Luis Obispo County (the County).  Developers of property in Cambria must receive "intent to serve" letters from the District in order to obtain water and sewer services.  The District issues a

limited number of intent to serve letters and maintains separate waiting lists for single-family and multiple-family projects. In 2000, the District adopted an ordinance establishing a moratorium on the waiting lists. All decisions related to the issuance and revocation of intent to serve letters are made by the District's Board of Directors (the Board).

JEL is a California corporation that develops residential and commercial property within the County. Joseph Lindsey (Lindsey) is JEL's principal owner and shareholder. Sometime prior to 1998, JEL initiated multiple-unit residential developments in Cambria on Arliss and Green Streets (the Arliss-Green project) and MacLeod Way (the MacLeod project). Several lots on the Arliss-Green and MacLeod projects (the secured property) were financed and secured by a deed of trust held by San Luis Trust Bank, now First California Bank (the Bank).

The District issued an intent to serve letter for seven units on the Arliss-Green project. JEL filed a petition for a writ of ordinary and/or administrative mandate challenging the District's actions and findings regarding JEL's entitlement to additional intent to serve letters and/or waiting list positions for the Arliss-Green and MacLeod projects.

On May 25, 2005, the parties executed a mutual release and settlement agreement (the settlement agreement) that was intended as a final settlement of any and all claims related to the dispute. The settlement agreement provided among other things that the District would issue JEL an intent to serve letter for an additional 11 dwelling units on the Arliss-Green project. It was also agreed that JEL would be placed at the end of the multi-family waiting list for 22 meter positions on the MacLeod project "[o]nce the present [waiting list] moratorium is lifted[.]"[1] The agreement expressly stated that the

---

[1] The agreement stated: "[JEL] shall be first in line after those presently on the DISTRICT's multi-family list to receive letters of intent for water available for multi-family projects for a total of 22 meter positions for the MacLeod property (comprised of 33 legal lots with common area, APNs 023-492-001 through 023-492-033), shown on Exhibit B hereto. Once the present moratorium is lifted, [JEL] shall be placed next in order on said multi-family list for said 22 meter positions. Letters of intent issued for said 22 meter positions shall be used for one multi-family (not single family)

2

letter of intent to be issued on the Arliss-Green project was "required to comply with all DISTRICT rules currently in effect," and that any letters of intent that might be issued on the MacLeod project in the future "will have to comply with all other DISTRICT rules in effect on issuance."

On September 1, 2005, the District issued an intent to serve letter for 18 units on the Arliss-Green project in accordance with the settlement agreement. The letter provided that its issuance was "subject to current and future rules, regulations, resolutions and ordinances of the [District]," and that the Board "reserves the right to revoke this 'Intent to Serve' letter at any time." The letter was valid for 18 months from the date of issuance, and JEL could apply for a six-month extension within 30 days prior to expiration. Any extension was to be approved or disapproved at the "full discretion" of the District's general manager Tammy Rudock, "and if granted it shall be subject to any conditions which may be imposed." The letter further provided that during the period of its validity, JEL "must obtain water and sewer permits for the project by submitting signed application forms, and an approved County Building Permit, together with payment of water and sewer connection fees. A water & sewer connection permit will then be issued to you. Failure to complete any of the requirements of this 'Intent to Serve' letter within the proscribed time restraints may result in revocation of this 'Intent to Serve' letter, forfeiture of fees and your project will be returned to the waiting list."

On May 24, 2007, the Board voted to approve JEL's request for an extension of the intent to serve letter on the Arliss-Green project. The following day, the District sent a letter informing JEL that an extension had been "conditionally approved" subject to the requirements that "[t]here shall be continuing progress made towards the receipt of all development approvals" for the project, and that JEL submit quarterly reports on the project's status. JEL was also notified that "[t]his letter will be placed on the [District] Board Agenda for May 2008. If at that time substantial progress has not

_____

development on the MacLeod property shown in Exhibit B hereto, including, but not limited to, parcels presently owned by [JEL] . . . together with any others of said 33 parcels [JEL] may acquire . . . ."

3

been made on the development project for this letter it can be revoked by action of a majority of the Board. Substantial progress shall include but not be limited to application for all permits for the project along with approvals." Lindsey signed the letter to acknowledge JEL's acceptance of its terms and conditions.

On March 14, 2008, the Bank initiated foreclosure proceedings on the secured property after JEL defaulted on its loan obligations. When the matter of JEL's progress on the Arliss-Green project was called for review on May 22, 2008, the Board determined that JEL had failed to make substantial progress in that it had not applied for and obtained approval of all the necessary permits. A majority of the Board then voted to revoke the intent to serve letter. No formal letter of revocation was ever sent. At a closed-door session on September 25, 2008, the Board voted to stop the revocation process.

The foreclosure sale was continued several times due to JEL's bankruptcy filing. On October 14, 2008, the trustee of JEL's bankruptcy estate (the trustee) applied for an 18-month extension of the intent to serve letter. In an accompanying letter to the Board, the trustee referred to his "fiduciary duty to protect the estate assets for the benefit of the creditors of the estate," and stated that the value of the property to which the intent to serve letter applied "would be substantially impaired without the Intent to Serve Letter." The trustee emphasized the "critical need for multi-family housing in the District," and offered that "[the] Bank has indicated that should it obtain title to the Cambria Property (through a Trustee's sale, which sale is currently scheduled for October 17, 2008), it intends to promptly move forward with a multi-family housing project, consistent with the District's desires[.]"

JEL also applied for an extension of the intent to serve letter. In an accompanying letter, Lindsey stated that "[a]fter the Board['s] tentative action to revoke the intent to serve letters in May of 2008, the unwillingness to give us a hearing to correct that action forced [JEL] to file Chapter 11. . . . We are applying for this extension as per your requirement and we hope that [the Bank] will accept our offer to swap lots so the Project can be kept as per agreement." JEL's architect submitted a letter in support of the

4

request, stating: "We are advised the Bank that is calling the [JEL] loan . . . also supports an extension, hoping to protect its collateral and allowing the proposed development plan for the property to be implemented by it. Mr. Lindsey has proposed cooperative application and development with the Bank's development team, as he will retain three lots among the current lots to which meter positions are assigned."

On October 31, 2008, the foreclosure sale was completed and the Bank became owner of the foreclosed lots. At a public hearing held on November 17, 2008, the Board adopted a resolution approving a settlement agreement with the Bank whereby the District agreed to "extend for all Bank owned real property the intent to serve entitlements for a period of five (5) years, expiring on November 25, 2013 and to immediately re-issue a multi-family Intent to Serve Letter to provide for service to up to sixteen (16) dwelling units," to be used solely for the development of a multi-family residential project. In exchange, the Bank agreed to "transfer in fee to the District or its designee, ten (10) legal lots and all water entitlements designated for these lots, located on MacLeod Way . . . ." The parties further agreed that the Bank would use reasonable diligence in processing the project, and that in the absence of such a showing the District could revoke the intent to serve letter. That same date, the District issued JEL an intent to serve letter for two units on the two parcels of property to which JEL retained title.

JEL filed a timely administrative claim against the District pursuant to Government Code section 900 et seq. The claim was subsequently denied. On February 19, 2009, JEL filed a petition for writ of administrative and/or ordinary mandate and a complaint for damages against the District. JEL subsequently filed an amended petition naming the Bank as real party in interest.[2] In a third amended complaint, JEL added claims against the District for breach of contract and inverse condemnation, and a claim against the Bank for breach of contract. The District and the Bank both demurred. While the demurrers were pending, the parties stipulated to allow JEL to file a fourth amended petition and complaint. The writ of mandate claim alleged that "[t]he District's actions of

_____

[2] The Bank is not a party to this appeal.

5

November 17, 2008 are contrary to law, in that the transfer of sixteen meter positions to [the Bank] is contrary to [District] regulations and the Settlement Agreement, which provide that said meters (by Letter of Intent) are issued to and held by [JEL] and cannot be transferred." The claim further alleged that "[t]he District's actions of November 17, 2008 are contrary to law, in that the contractual promise of conveyance by the District of water meter waiting list positions confirmed in [JEL's] name pursuant to the Settlement Agreement for the MacLeod Way property to [the Bank] is contrary to [District] regulations and the Settlement Agreement."

On April 28, 2011, the court filed a tentative decision denying JEL's causes of action for a writ of ordinary and/or administrative mandate. The court held: "[JEL] fails to establish that the May 22, 2007 [*sic*] revocation of the Intent to Serve Letters should be set aside. Substantial evidence supports that action. It appears that [JEL] concedes that point in its reply brief when it asserts that it does not seek such an order. [¶] Once revoked, [JEL] fails to establish how or why [the District] was obligated to extend any new or revived water rights to it. Therefore, [JEL] lacks a basis for complaining that [the District] should have given it more than two multi-unit will-serve letters in November of 2008. [¶] Finally, [JEL] fails to explain why it should be heard to object to [the District's] acts in settling potential litigation with the Bank which resulted in the conveyance of 16 multi-unit water entitlements to Bank; and it fails to establish that those water will-serve letters should be issued to [JEL] in the event that [the District] improperly issued them to Bank." In overruling JEL's objections to the decision, which subsequently became final, the court stated: "Petitioner has failed to establish that the water entitlements granted under the . . . settlement agreement survived both the revocation of those rights and the foreclosure."

The District and the Bank both demurred to the remaining causes of action for breach of contract and inverse condemnation. The court sustained the Bank's demurrer without leave to amend. The court also sustained the District's demurrer without leave to amend on the cause of action for inverse condemnation, yet granted leave to amend on the breach of contract claim. JEL filed a fifth amended petition and

6

complaint. The District demurred to the sole remaining viable claim for breach of contract. The court overruled the demurrer and ordered the District to file an answer. The District filed an answer, then moved for judgment on the pleadings. JEL opposed the motion. Following a hearing on April 17, 2012, the court granted the District's motion without leave to amend, thereby disposing of JEL's sole remaining cause of action. Judgment was entered in favor of the District, and JEL timely appealed.

DISCUSSION

JEL contends the court erred in denying its petition for ordinary and/or administrative mandate, sustaining without leave to amend the District's demurrer to JEL's cause of action for inverse condemnation, and granting the District's motion for judgment on the pleadings on JEL's breach of contract claim. The District responds that the judgment should be affirmed because JEL has failed to provide a sufficient appellate record and submitted a procedurally and substantively improper opening brief. In its reply brief, JEL purports to justify its failure to designate a complete record by offering that some of the documents that are essential to our review of its claims—such as the decision denying JEL's petition for writ relief and the order overruling JEL's objections thereto—are not expressly identified in the superior court's master record sheet. JEL also attaches copies of the decision and master record sheet as exhibits to its reply brief.

We agree with the District that the paucity of the record and JEL's failure to comply with the appellate briefing rules are fatal to its appeal. JEL bears the burden of demonstrating by an adequate record that there is prejudicial error in the trial court's ruling. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.) We never presume such error, but rather presume the contrary. (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 88.) "'A necessary corollary to this rule [is] that a record is inadequate, and appellant defaults, if the appellant predicates error only on the part of the record he provides the trial court, but ignores or does not present to the appellate court portions of the proceedings below which may provide grounds upon which the decision of the trial court could be affirmed.'" (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435 (*Osgood*).)

7

As the appellant, JEL was required to provide a record containing all of the written documents and oral proceedings related to each challenged ruling.  (Cal. Rules of Court, rule 8.120; *Osgood, supra*, 127 Cal.App.4th at p. 435.)[3]  The record does not include JEL's moving papers in support of its writ claims, the decision denying those claims, the relevant demurrer or record of the oral proceedings thereon, or the reporter's transcript of the hearing on the District's motion for judgment on the pleadings.[4]

JEL's briefing is similarly inadequate.  The opening brief begins with an introduction full of unsupported factual assertions.  Moreover, JEL primarily challenges the District's administrative ruling, yet its opening brief contains but one citation to the lengthy administrative record.[5]  To show an abuse of discretion, JEL must demonstrate that the court's findings are not supported by substantial evidence in the record.  (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 824.)  In issuing its ruling on the writ claims, the trial court had to examine the administrative record for errors of law and conduct an

---

[3] All further rule citations are to the California Rules of Court.

[4] Although JEL attached copies of the decision denying writ relief and the master record sheet as exhibits to its reply brief, this is not the proper procedure for designating, correcting or augmenting an appellate record. (See rules 8.120, 8.121, 8.122, 8.155; cf. rule 8.204(d) [parties may attach to their briefs copies of documents "in the appellate record" that do not exceed 10 pages].)  Nor has JEL requested that we take judicial notice of these documents. (See, e.g., *Ross v. Creel Printing & Publishing Co.* (2002) 100 Cal.App.4th 736, 744 [Court of Appeal refused to consider materials attached to briefs where no compliance with rules of court or procedures for requesting judicial notice]; see also, e.g., rule 8.252 [procedures for seeking judicial notice by reviewing court]; Evid. Code, § 459 [same].)  We also note that counsel does not explain how any errors or omissions in the master record sheet excuse his failure to provide a sufficient appellate record.  Although the decision denying JEL's claims for writ relief is not properly before us, we consider it to the extent it demonstrates that his appeal lacks merit.

[5] In the conclusion to its reply brief, JEL requests "permission to augment the record on appeal by filing a motion to have the entire administrative record . . . transmitted to the court.  Thereafter each side would be given reasonable opportunity to comment thereon."  Aside from the procedural impropriety of this request, the administrative record was transmitted to us pursuant to JEL's notice designating the record on appeal.  Because JEL already had a reasonable opportunity to comment on the administrative record, there is no reason for us to grant such an opportunity.

independent review of the entire record to determine whether the administrative findings are supported by the weight of the evidence. (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 143.)

In challenging the denial of its writ claims, JEL merely argues that it "had an absolute vested property right" in the water positions identified in the settlement agreement. The District's Municipal Code makes clear, however, that intent to serve letters and wait list positions[6] are "valid only for the parcel or combination of parcels originally applied for . . . ." (Cambria Comm. Serv. Dist. Code of Ordinances, § 8.04.100.) Moreover, positions for multi-family residential developments cannot be transferred. (*Ibid.*) Although positions may be assigned, they are only assignable "by the current owner of a parcel to a new owner of the same parcel," subject to conditions and/or limitations that do not apply here. (*Id.* at § 8.04.090.) The settlement agreement expressly provided that the intent to serve letters would be governed by these rules.

JEL's remaining contentions likewise fail to substantively challenge the trial court's stated bases for the disputed rulings and are devoid of authority or reasoned analysis. The District's motion for judgment on the pleadings reflects that in sustaining the District's demurrer, the court stated: "As the Court noted in its Decision on the severed mandate causes of action, . . . [JEL] was unable in the mandate proceeding to provide any direct authority to establish that a contractual intent to serve letter to provide future water service to property subsequently lost in foreclosure creates a fundamental right that is entitled to constitutional protection. It has not done so in opposing the instant demurrer. In addition, [JEL's] opposition does not address the 'public use' issue. The Court considers [JEL's] failure to oppose these contentions as an admission that the demurrer is meritorious." JEL has failed to meet its burden of showing that this ruling was erroneous. (*Osgood, supra*, 127 Cal.App.4th at p. 435.)

---

[6] Under the District's Municipal Code, a "position" is defined in pertinent part as "a parcel within the district which fits in any of the following categories: . . . (4) a currently valid waiting list position; (5) a parcel with a currently valid intent to serve letter . . . ." (Cambria Comm. Serv. Dist. Code of Ordinances, § 8.04.010.) The code further provides that "[p]ositions which are currently valid waiting list positions are designated based on the designation on the district waiting lists. Positions, which are parcels with a currently valid intent to serve letter . . . are designated based on the designation in the intent to serve letter." (*Id.* at § 8.04.040.)

JEL's assertion that the court erred in granting the District's motion for judgment on the pleadings merely offers that the District violated the settlement agreement when it "revoke[d] and/or transfer[red] the water entitlements without [JEL's] written consent . . . ." JEL complains that "[t]he trial court place[d] great weight on the fact that JEL lost the majority of lots in foreclosure and somehow that change gave [the District] the right to revoke, repudiate the revocation and transfer the water positions." To the extent JEL asserts that the foreclosure was precipitated by the District's decision to revoke the water entitlements, the court upheld that decision based on the finding that JEL had failed to make substantial progress on the project, a finding that JEL does not challenge on appeal.[7]

After the matter was set for oral argument, a new attorney associated in as JEL's counsel. The day before argument, counsel filed a letter brief asking us to consider *H & M Associates v. City of El Centro* (1980) 109 Cal.App.3d 399, and attached a copy of the opinion. In *H & M Associates*, the owner of an apartment building filed a complaint against El Centro and its city council alleging a cause of action for intentional interference with contractual relationships and other claims. The complaint alleged the city had terminated the building's water service for failure to pay without providing notice or an opportunity to satisfy the delinquency. The city manager, who knew the plaintiff had an application pending with the Federal Housing Authority (FHA) to refinance mortgages on the property, called the mortgagee, the FHA, the local newspaper, and other agencies to report that the building's water service had been terminated. These

---

[7] In its briefs, JEL asserts that the District violated several standard clauses in the settlement agreement relating to waiver, assignment, and other issues. JEL offers no indication, however, as to whether these claims were raised below. In any event, JEL fails to demonstrate that any of the cited clauses were violated. To the extent JEL asserts the District violated its agreement to release and waive the protections of Civil Code section 1542, that clause relates to claims the District "[did] not know or suspect to exist in [its] favor *at the time of executing the release . . . .*" (Civ. Code, § 1542, italics added.) Aside from the fact that the District has not asserted any claim against JEL, its decision to revoke the intent to serve letter and its subsequent actions were based on circumstances that arose *after* the settlement agreement. Similarly, JEL's assertion that the District violated the "no assignment" clause of the settlement agreement fails because the District's actions did not "assign, transfer or hypothecate to anyone any debt, judgment, claim, liability, demand, action, cause of action, or any interest therein."

10

actions allegedly caused the plaintiffs to lose tenants, which led to default on the mortgages and ultimately foreclosure. (*Id.* at p. 404.) In reversing the sustaining of a demurrer without leave to amend, the Court of Appeal found that the defendants' claims of immunity and privilege were not apparent on the face of the complaint and thus had to be pled as affirmative defenses. (*Id.* at pp. 405-411.)

Counsel for JEL asserts that *H & M Associates* "is somewhat analogous to the instant case, wherein the public agency in violation of its 2005 agreement with [JEL], purported to 'revoke' its obligation to furnish appellant with water service and favorable placement on waiting lists, and notified others. As a result, according to the allegations in the Fifth Amended Complaint, [JEL's] properties were lost to foreclosure. [JEL], like the appellant in the *H. & M. Associates* case, should be entitled to recover damages from the public agency." The two cases are inapposite. JEL's breach of contract cause of action is premised on its claim that the District's actions violated the terms of the settlement agreement. This very claim was adjudicated adversely to JEL in the writ proceedings. Where, as here, a case presents both equitable and legal claims, the equitable claims are properly tried first. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1238 (*Nwosu*).) Moreover, "if the court's determination of [the equitable] issues is also dispositive of the legal issues, nothing further remains to be tried by a jury. [Citations.]" (*Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 671; *Nwosu,* at p. 1238.)

In denying the writ claims, the court rejected JEL's claim "that the water entitlements granted under the . . . settlement agreement survived both the revocation of those rights and the foreclosure." JEL's causes of action for breach of contract and inverse condemnation were both premised on this same claim. Because the court's adjudication of the equitable claims was dispositive of the legal claims, the District was entitled to judgment in its favor on all claims. (*Raedeke v. Gibraltar Sav. & Loan Assn.,* *supra,* 10 Cal.3d at p. 671; *Nwosu, supra*, 122 Cal.App.4th at p. 1238.)[8]

---

[8] At oral argument, JEL asserted that the District's motion for judgment on the pleadings was an improper motion for reconsideration of the court's order overruling the District's demurrer to the cause of action for breach of contract. Because this claim was not raised

The judgment is affirmed.  The District shall recover its costs on appeal.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.

---

in JEL's appellate briefs, it is forfeited.  (*Collins v. Navistar, Inc.* (2013) 214 Cal.App.4th 1486, 1508, fn. 8.)  In any event, the claim lacks merit.  Although a party generally cannot move for judgment on the pleadings on the same grounds that were raised in an unsuccessful demurrer absent "a material change in applicable case law or statute since the ruling on the demurrer" (Code Civ. Proc., § 438, subd. (g)(1)), a motion granted in violation of this rule is not subject to reversal "unless the challenged error results in a miscarriage of justice. [Citation.]  Where, as here, a motion for judgment on the pleadings is granted based upon a question of law, there is no miscarriage of justice if the court's ruling on the legal merits is correct. [Citation.]"  (*Thomson v. Canyon* (2011) 198 Cal.App.4th 594, 603, citing Cal. Const., art. VI, § 13.)  As we have explained, JEL fails to demonstrate that the court's ruling on the merits was erroneous.

12

Jac Crawford, Judge

Martin J. Tangeman, Judge

Superior Court County of San Luis Obispo

_____


Law Office of David L. Milligan, David L. Milligan; Tritt and Tritt, Jim Tritt, for Plaintiff and Appellant.

Carmel & Naccasha, Timothy Carmel, Michael M. McMahon for Defendant and Respondent.